258 P.2d 724

**HOLLINGSWORTH v. HICKS et al.**

No. 5498.

Supreme Court of New Mexico.

June 13, 1953.

Harry L. Bigbee and Donnan Stephenson, Santa Fe, for appellant.

Gilbert & Gilbert and L. C. White, Santa Fe, for defendants and cross-plaintiffs Williams.

M. W. Hamilton, Santa Fe, for defendants and cross-defendants Hicks.

LUJAN, Justice.

Action by Margaret Hollingsworth against Worley Edward Hicks, W. A. Williams and Sarah E. Williams, his wife, and W. A. Williams, Jr., and Dorothy J. Williams, his wife, seeking to quiet title in herself to an alleged one-half undivided interest in certain real estate situated in Rio Arriba County. From a judgment rendered in favor of the defendants, the plaintiff appeals.

At the outset it is to be observed that the whole theory of plaintiff's (appellant) case, as well as her entire contention is that, since the balance of the purchase price of the land contract was paid during coverture, there arises a presumption to the effect that such property is community property.

■ The status of real property is governed in this state by statute. Thus property *owned* by either spouse before marriage or acquired after marriage by gift, bequest, devise or descent, with the rents, issues and profits is the separate property of that spouse. Sections 65–304 and 65–305, 1941 Compilation. All other property acquired by either husband or wife or both after marriage is community property. Section 65–401, 1941 Compilation.

■ Although under our statute the presumption of community property arises from the naked fact that it was acquired during marriage. Barnett v. Hedgewood, 28 N.M. 312, 211 P. 601; Carron v. Abounador, 28 N.M. 491, 214 P. 772; Roberts v. Roberts, 35 N.M. 593, 4 P.2d 920; In re White's Estate, 41 N.M. 631, 73 P.2d 316; Loveridge v. Loveridge, 52 N.M. 353, 198 P.2d 444, yet, when, as in this case, upon the exhibition of the whole title it appears that its origin preceded the marriage, and that it was separate property of Hicks, we are of the opinion that the presumption no longer prevails. Strong, Trustee v. Eakin, 11 N.M. 107, 66 P. 539; In re White's estate, supra.

The facts shown by the record, essential to an understanding of our holdings are, substantially, these:

That on November 19, 1928, H. L. Hall and Marguerite B. Hall, his wife, entered into a contract with Worley Edward Hicks, then a single man, whereby the Halls agreed to convey certain real estate situated in Rio Arriba County to him. The covenants of the contract material to this cause are as follows:

"Witnesseth, that for and in consideration of—$4,200.00—to be paid to the party of the first part by the party of the second part as hereinafter set forth, and the other

covenants contained herein, the party of the first part agrees to sell and convey to the party of the second part by deed of warranty the following described tract of land * * * (description).

"The above described deed shall be delivered to the party of the second part when three fifths of the total purchase price contained herein has been paid to the party of the first part, with interest thereto accrued and all the other conditions of this contract have been performed by the second party, provided however, that the party of the second part shall at the same time of the delivery of the said deed, execute in favor of the first party herein in good and satisfactory first money mortgage covering the above described premises to secure to the first party the payment of all the unpaid principal and interest which shall then be due on this contract, and the said mortgage is to be delivered to the party of the first part herein. The party of the second part agrees to pay to the party of the first part the entire purchase price as contained herein, and set forth above, at the times and in the amounts so given below:

Five Hundred Dollars—On the execution of this agreement, the receipt of which is hereby acknowledged by first party;
Seven Hundred and Forty Dollars on December 1, 1929;
Seven Hundred and Forty Dollars on December 1, 1930;
Seven Hundred and Forty Dollars on December 1, 1931;
Seven Hundred and Forty Dollars on December 1, 1932;
Seven Hundred and Forty Dollars on December 1, 1933."

During the month of December in the year 1928 Worley Edward Hicks went into possession of this land moving thereon twenty-eight or thirty head of cattle, eight horses, one plow, harrows and other farming implements.

On July 29, 1929, plaintiff and Hicks were married to each other at Pagoso Springs, Colorado, and lived together as man and wife until March 29, 1935, at which time she obtained a divorce from him. The plaintiff had no money whatever or any property at the time she married the defendant.

On December 1, 1929, Hicks made a payment of $800, on his contract, and on December 1, 1930, he made another payment of $364.49. This money was derived from the sale of his own cattle. On December 1, 1934, plaintiff and this defendant jointly executed a mortgage on the land in question to the Land Bank Commissioner, Wichita, Kansas, to secure the sum of $3,400. The first installment on this mortgage was to become due and payable on

June 1, 1938. Thereafter to be paid every six months until finally discharged.

On the same date the defendant, Hicks, executed his personal note in the sum of $700 to pay Hall. Upon the payment of the balance due on the purchase contract H. L. Hall and Marguerite B. Hall made, executed and delivered to the defendant their warranty deed for said property. No part of the above loans were ever paid during the marriage between plaintiff and defendant. The two loans were paid subsequent to the divorce by the defendant from funds derived from the sale of his cattle. From 1935 to 1943 plaintiff and this defendant, although not remarried, lived together as man and wife, during which time he supported her and two minor children one of them from a previous marriage.

On February 24, 1947, Worley Edward Hicks and Annie Hicks, his present wife, entered into a contract with W. A. Williams and Sarah E. Williams, his wife, and W. A. Williams, Jr., and Dorothy J. Williams, his wife, whereby they agreed to convey the land in question to the Williams, together with other personal property located on said land. On July 14, 1949, the present suit was instituted and upon the conclusion of the trial the court made the following findings of fact:

"3. Prior to the marriage between the plaintiff and Worley Edward Hicks, the defendant Worley Edward Hicks contracted to purchase all of the land and real estate at issue in this cause from one Leroy Hall and wife for a total purchase price of $4,200.00, upon which said defendant paid the sum of Five Hundred Dollars ($500.00) at the time of entering into said contract. Said contract was in words and figures as specified in defendant Hicks' Exhibit No. 2, introduced in evidence herein.

"4. Subsequent to the marriage between the plaintiff and the defendant, Worley Edward Hicks, the said defendant made additional payments upon the purchase price under said contract, the first of said payments being in the sum of Eight Hundred Dollars ($800.00) and the second thereof in the sum of about Three Hundred Dollars ($300.00), both of said payments were made from the proceeds of the sale of properties owned by said defendant prior to his said marriage.

"5. Thereafter and on or about the 1st day of December, 1934, with the assistance of said Leroy Hall, and in order to enable the defendant, Worley Edward Hicks, to complete the purchase of said land which he had so contracted to buy the said defendant mortgaged the said property to Federal Farm Loan Association and paid the remainder of the purchase price thereof from the proceeds of said mortgage. Said Hall and wife deeded said

property to said defendant at or about the time of the execution of said mortgage. The said mortgage was as specified in plaintiff's Exhibit No. 2, and was joined in by the plaintiff, as wife of said defendant.

"6. Thereafter and on or about January 21, 1935, the plaintiff filed suit against the defendant Hicks in the District Court of the State of New Mexico within and for the County of Rio Arriba in said Cause No. 3493 on the docket of said court. Final decree in said cause was entered on the default of the defendant Hicks on March 29, 1935, granting the plaintiff a divorce from said defendant.

"7. The proceedings in said cause No. 3493 including the evidence taken therein, were as shown in plaintiff's Exhibit No. 3, and defendants Hicks' Exhibits, 3, 3A, 3B and 3C, introduced in evidence herein.

"8. The complaint in said Cause No. 3493 alleged only as follows with respect to the real property of the parties thereto:

" 'That during the said marriage, the parties hereto have acquired the following described property, to-wit: 1 ranch consisting of 171 acres of land.' And did not allege that any of said property was the community property of the parties to said cause.

"9. That the decree in said Cause No. 3493 merely found as follows: 'That during the said marriage the parties have acquired the following described property, to-wit: 1 ranch consisting of 171 acres of land.'

"10. That the decree in said cause merely concluded as a matter of law with respect to the real estate referred to therein: 'That the defendant herein is entitled to retain the ranch and ranch property and continue to farm the same, except such part as is divided between the parties hereto as the interest of each in and to the personal property of the parties, and the said defendant will be solely responsible for the encumbrances and indebtedness which now exists against said property as hereinbefore listed.' and contained no conclusion of law that said real estate was the community property of the parties to said cause.

"11. That in ordering portion of said decree in said cause it was not decreed that said real estate was the community property of the parties to said cause, nor did it award to the plaintiff herein any interest therein, the only part of the ordering portion of said decree which referred to said property being as follows: 'That the defendant herein be and he hereby is ordered to retain the ranch and ranch property, and continue to farm the same, except such part as is divided between the parties herein as the interest of each in and to the personal property of the parties, the said defendant hereby is solely re-

sponsible for the encumbrances and indebtedness which now exists against said property as hereinabove enumerated.'

"12. The decree in said Cause No. 3493 was ambiguous with respect to said real estate as matter of fact.

"13. Upon the trial of said cause No. 3493 the plaintiff made no claim to said real estate but to the contrary testified that she had made a property settlement agreement with the defendant, Worley Edward Hicks, under which he was to keep said property.

"14. That the entire indebtedness secured by the mortgage on said real estate was paid by the defendant, Worley Edward Hicks, from his separate funds subsequent to the granting of the divorce between said defendant and the plaintiff herein.

"15. That the entire purchase price of the property at issue herein was paid from the separate funds of the defendant, Worley Edward Hicks.

"16. That on or about the 24th day of February, 1947, the defendant, Worley Edward Hicks, together with his then wife, the cross-defendant, Annie Hicks, entered into a contract to sell all of said real estate together with other properties, to the defendants and cross-complainants Williams for the sum of Thirty-One Thousand Dollars ($31,000.00). Said contract being in words and figures as specified in Exhibit A to the Amended Answer of said defendants and cross-complainants.

"17. That pursuant to said contract said defendants and cross-complainants have paid to the defendant, Worley Edward Hicks, a total of Twenty Thousand Dollars ($20,000.00) leaving a balance of Eleven Thousand Dollars ($11,000.00) and interest still unpaid thereon. The sum of Five Thousand Dollars ($5,000.00) and accrued interest to the date of the deposit thereof of said remaining Eleven Thousand Dollars ($11,000.00) has been deposited by the defendants Williams to the registry of this court pursuant to order in this cause.

"18. That the property at issue in this cause is now of the value of Twenty-Three Thousand Dollars ($23,000.00).

"19. That pursuant to the said contract between the defendants and cross-complainants Williams and the cross-defendant Hicks the said cross-defendants furnished the defendants Williams with an Abstract of Title to said property but that said Abstract failed to disclose the said Cause No. 3493 or any of the proceedings therein.

"20. That pursuant to said contract between the cross-defendants Hicks and the cross-complainants Williams the said cross-defendants executed and deposited in escrow with The First National Bank of Santa Fe a warranty deed in the usual form conveying said property to the cross-complainants Williams which said deed the

cross-complainants Williams are entitled to receive upon the completion of the payments on said property and by the terms of the cross-defendant Hicks are obligated to defend the title to said property."

From the foregoing findings of fact the court concluded as a matter of law:

"1. The plaintiff has acquired no right, title or interest in or to any of the property described in the complaint herein, either by reason of her marriage to the defendant Hicks or under the divorce decree in said Cause No. 3493 or otherwise.

"2. That the final decree in said Cause No. 3493 is not res adjudicata of any of the issues in the case at bar.

"3. That the decree in said Cause No. 3493 is ambiguous as matter of law.

"4. That the property at issue herein is and at all material times has been the separate property and estate of the defendant, Worley Edward Hicks, subject only to the rights and equities of the defendants Williams.

"5. That the plaintiff should be denied all relief prayed for in her complaint herein."

The plaintiff (appellant) assigns eighty-four errors which she discusses under six points. Under Point 1, it is contended that "title to the real estate in question having been acquired during the time when appellee Hicks and appellant were husband and wife, the land was community property." There is no merit to this contention.

The contract between Hicks and the Halls was the origin of the title. Hicks was a single man at the time it was entered into and consequently his separate property. The title relates to its origin and must take the impress of its character from it. The general rule is expressed in American Jurisprudence (Community Property) Volume 11, Section 20, page 187:

"The status of property as separate or community property is fixed as of the time when it is acquired. The word 'acquired' contemplates the inception of title, and as a general rule the character of the title depends upon the existence or nonexistence of the marriage at the time of the incipiency of the right by virtue of which the title is finally extended and perfected; the title when so extended and perfected relates back to that time. Stated in another way, the status of title, as belonging to one estate or the other, is determined by the status of the original right, subsequently, matured into full title. Under this rule, property to which one spouse has acquired an equitable right before marriage is separate property, though such right is not perfected until after marriage. Thus, property purchased by one spouse before marriage is separate

property, though the deed therefor is not executed and delivered until after marriage, and this is true though a part of the purchase price is not paid until after the marriage * * *".

And in de Funiak's Principles of Community Property, Vol. 1, section 64, page 152, the rule is stated as follows:

"* * * Our own courts seem to be in accord with this view to the extent that they hold that the inception of a property right or title before marriage establishes the nature of the property as separate property although the right or title may not be finally perfected or completed until during marriage. The nature of the particular property right may range from a right of action accruing before marriage to the right to acquire or purchase property. Thus the property purchased before marriage by one spouse is separate property although the deed may be delivered during marriage."

See Welder v. Lambert, 91 Tex. 510, 44 S. W. 281; Barrett v. Franke, 46 Nev. 170, 208 P. 435; 41 C.J.S., Husband & Wife, § 487(b); p. 1026; McKay on Community Property, 2d Ed., Chapter 31, Section 533, page 359.

The above rule has been followed by this court in Laughlin v. Laughlin, 49 N.M. 20, 155 P.2d 1010; McElyea v. McElyea, 49 N.M. 322, 163 P.2d 635; McDonald v. Lambert, 43 N.M. 27, 85 P.2d 78, 120 A.L. R. 250.

The defendant (appellee) Hicks, contracted to purchase the property prior to his marriage with the plaintiff and at that time made the initial payment of $500 on the purchase price. Two additional payments of $800 and $364.49, respectively, were made by the defendant during coverture from his separate property and the balance of the purchase price was likewise paid from his separate property, subsequent to the divorce of the parties.

There seems to be no rule better founded in law, reason and convenience than that all the essential steps to complete a title shall be taken together as one act, and operate from the beginning of the transaction by relation. The following language is found in Gibson v. Chouteau, 13 Wall. 92, 20 L.Ed. 534:

"By the doctrine of relation is meant that principle by which an act done at one time is considered by a fiction of law, to have been done at some antecedent period. It is usually applied where several proceedings are essential to complete a particular transaction, such as a conveyance or deed. The last proceeding which consummates the conveyance is held for certain purposes to take effect by relation as of the day when the first proceeding was held."

See, also, Stahl v. Lynn, 86 Wis. 75, 56 N.W. 188; Cummings v. Newell, 86 Minn. 130, 90 N.W. 311; Sutherland v. Goodnow, 108 Ill. 528, 48 Am.Rep. 560; Young v. Guy, 87 N.Y. 457; Womack v. Powers, 50 Ala. 5; Carney v. Reed, 11 Ind. 417; Thompson v. Spencer, 50 Cal. 532.

■ Applying the foregoing rule to the instant case, we are of opinion and so hold that the property involved herein is the separate property of· the defendant, Hicks. The delivery of the warranty deed to the land is not regarded in law as alone constituting a sale of the land, but is the final step of the transaction, which consummated it pursuant to and in accordance with the previous contract between the parties. Under such circumstances, the deed relates back to the contract, and, for the promotion of justice and the protection of the purchaser, ·the title is considered, as between the parties, as having vested in the grantee from the time the contract was made.

We deem the rule applicable to the case at bar, and under it defendant's, Hicks, title to the land had its origin on the date of the written contract, namely, November 19, 1928, and so far as it may be necessary to protect his rights in the land conveyed, the title is to have taken effect by relation as of that date.

■ The plaintiff further contends that the judgment of the lower court in the divorce proceedings between the parties is res adjudicata as to their respective property rights. A judgment is not res judicata unless the identical matter in issue in the subsequent proceedings was determined by the former adjudication. Paulos v. Janetakos, 46 N.M. 390, 129 P.2d 636, 142 A.L.R. 1237.

The complaint in the former case alleged:

"That during the said marriage, the parties hereto have acquired the following described property, to-wit: One ranch, consisting of 171 acres of land."

It then enumerates the personal property. The judgment entered in the former case, among other things, recites:

"The court finds: 'That during the said marriage, the parties hereto have acquired the following described property, to-wit: One ranch, consisting of 171 acres of land,'" (enumerated personal property).

It then concludes as a matter of law:

"That the plaintiff herein is entitled to receive from defendant the sum of $15.00 per month for the care, maintenance and support of the minor child born of said marriage, and is entitled to have the following described personal property set aside as *her sole and separate property*." (List of property enumerated.)

Although, the lower court by its final judgment decreed and set aside specific

articles of personal property to the plaintiff, and declared it to be *her sole and separate property,* yet, it did not in terms determine whether or not the disputed land was the community property of the parties. In this regard, the judgment reads:

"That the defendant herein be and he hereby is ordered to retain the ranch and ranch property, and continue to farm the same and except such part as is divided between the parties herein as the interest of each in and to the personal property of the parties, the said defendant is solely responsible for the encumbrances and indebtedness which now exists against said property as hereinabove enumerated."

█ It is a fundamental rule that: "A judgment must be definite and certain in itself, or capable of being made so by proper construction. It must fix clearly the rights and liabilities of the respective parties to the cause, and be such as defendant may readily understand and be capable of performing, and such as to admit of enforcement, to constitute an estoppel between the parties * * *." 49 C.J.S., Judgments, § 72, p. 191.

As to the fact that judgments and decrees must be certain and unequivocal, it is aptly stated in Freeman on Judgments, Vol. 1, 5th Ed., Section 72, page 126, as follows:

"Inasmuch as the judgment and its enforcement is the end and aim of the whole litigation, to satisfy this purpose it must so dispose of the matters at issue between the parties that they and such other persons as may be affected, will be able to determine with reasonable certainty the extent to which their rights and obligations have been determined * * *. A test sometimes applied is that it must be so certain and definite that it may be pleaded or otherwise relied upon in subsequent proceedings as an estoppel or bar with respect to the matters adjudicated * * *."

█ The declaration in the instant case, "that the defendant herein be and he hereby is ordered to *retain* the ranch and ranch property, and continue to farm the same," is on its face indefinite, uncertain, unintelligible, so far as it purports to be a determination of the property rights of the parties in the land disputed. It did not determine whether the ranch was or was not community property.

*In our opinion the plea of former adjudication is not available to the plaintiff upon the record before us.*

It is further contended that the court erred in admitting certain evidence to explain the former judgment, inasmuch as the same was unambiguous. We are unable to agree with counsel.

█ It is the general rule that where the language of a judgment or decree is clear

and unambiguous, neither the pleadings nor the findings or verdict, nor matters dehors the record may be resorted to to change the meaning. It must stand and be enforced as it speaks. But when the meaning is obscure, doubtful, or ambiguous, the judgment, pleadings, and entire record may always be resorted to for the purpose of aiding in the construction thereof. See Bond v. Markstrum, 102 Mich. 11, 60 N.W. 282, Kelliher v. Stone & Webster, 5 Cir., 75 F.2d 331, 333; Reaves v. Turner, 20 Okl. 492, 94 P. 543; Houston Oil Co. of Texas v. Village Mills Co., Tex.Com.App., 241 S.W. 122.

 The function of the process of construction is to determine the intention and meaning of the author of a judgment or other instrument. The record of a former trial may be consulted to determine what was actually passed upon. Bond v. Markstrum, supra; Kelliher v. Stone & Webster, supra; 1 Black on Judgments, Section 123, page 179. The rule is stated in Freeman on Judgments, Volume 1, 4th Ed., Section 45, pages 51 and 52, as follows:

"* * * If the entry of a judgment is so obscure as not to express the final determination with sufficient accuracy, reference may be had to the pleadings and to the entire record * * *. In case of doubt regarding the signification of a judgment, or any part thereof, the whole record may be examined for the purpose of removing the doubt * * *."

And in Black on Judgments, 2d Ed., Volume 1, Section 123, the following language is used:

"The rule for the construction of ambiguous judgments is clearly stated by the supreme court of Kansas in the following language: 'Wherever the entry of a judgment is so obscure as not to clearly express the exact determination of the court, reference may be had to the pleadings and other proceedings * * *.'"

In Craddock v. Edwards, 81 Tex. 609, 17 S.W. 228, 230, the court said:

"Decrees, like other writings, frequently require construction, and, when such is the case, the nature of the rights asserted in the suit by the parties, respectively, should be looked to, in order to throw light upon their interpretation."

See, also, Washington, Alexandria & Georgetown Steam-Packet Co. v. Sickles, 24 How. 333, 16 L.Ed. 650; Russell v. Place, 94 U.S. 606, 610, 24 L.Ed. 214.

We are satisfied with the rule hereinabove referred to and think its application in the present case necessitates an affirmance of the court's action in this regard.

 The plaintiff also complains of the action of the trial judge in allowing the de-

fendants to introduce testimony, over her objection, which she claims was beyond the limits set by the trial judge at the pretrial conference. When all of the testimony, as limited by the pretrial conference was in, the case was not ripe for judgment because of the unusual wording of the decretal part of the prior judgment, unless the finding of fact No. 3 was still alive and was binding on the parties, which we do not believe was the case. The plaintiff does not show nor does she claim, in her brief, that she was deprived of an opportunity to introduce evidence rebutting testimony outside of the issues as is claimed was fixed at the pretrial conference. If the plaintiff was taken by surprise by the action of the trial judge she should have applied for a continuance upon that ground, Sections 19–808, 19–809, 1941 Compilation; but as she did not do so, but proceeded with the trial, the objection must be considered as waived.

Other questions are presented by the appeal but the conclusion reached disposes of the case. The judgment will be affirmed.

It is so ordered.

COMPTON and COORS, JJ., concur.

SADLER, C. J., did not participate.

McGHEE, Justice (specially concurring).

I agree Mr. Justice LUJAN has reached the correct result in this case, but feel I should say something concerning the issues and the reasons controlling my decision.

For a more complete statement of the facts the reader is referred to the opinion of Mr. Justice LUJAN.

The complaint in the divorce case, No. 3493, Rio Arriba County, contains the following in addition to conventional grounds for divorce and custody of a child of the parties:

"6. That during said marriage, the parties hereto have acquired the following described property, to-wit: One ranch, consisting of 171 acres of land, (Various items of personal property)

"That there is a government loan of $3,400.00 on the above ranch, together with a personal debt of $700.00."

The prayer contained, among other matter, the following:

"3. That a division of the community property acquired by the parties hereto be made, or in the event the defendant is allowed to keep said property, that a reasonable settlement of her interest be made with her, or if the Court holds that the community property is to remain with defendant, that upon the payment of the indebtedness now owing on same, that plaintiff be

allowed one-half of the profits derived therefrom.

"4. That the community property acquired by the parties hereto is not to be sold or disposed of in any way without the consent of plaintiff."

The matter contained in paragraph 6 of the complaint was, in my opinion, sufficient to allege the ranch here in dispute was the community property of the plaintiff and defendant; and the prayer, to which resort may be had for light on the pleader's theory of the case, shows paragraph 6 was so intended. The portions of the prayer quoted also throw light on the unusual wording of paragraph 5 of the decree, which reads:

"5. That the defendant herein be and he hereby is ordered to retain the ranch and ranch property, and continue to farm the same, except such part as is divided between the parties herein as the interest of each in and to the personal property of the parties, and the said defendant hereby is solely responsible for the incumbrances and indebtedness which now exists against said property as hereinabove enumerated."

Among the findings of fact which are incorporated in the judgment we find, among other matter, the following:

"3. That during said marriage, the parties hereto have acquired the following described property, to-wit: One ranch, consisting of 171 acres of land. (Various personal property as described in the complaint)".

It was also found encumbrances and indebtedness amounting to $5,312.30 existed against the property.

A finding was made the plaintiff was entitled to receive $15 per month for the support of the minor child of the parties, and was also entitled to have certain household goods and provisions set aside to her as her sole and separate estate. It was also found the defendant was entitled to have milk delivered to her weekly in Chama, and to have certain meat delivered to her in the fall and spring of each year. The decree properly awarded her the household goods and provisions mentioned in this paragraph, and also made a proper award of the alimony, custody of the child, and granted a divorce.

As I construe the most unusual language of paragraph 5 of the decree, the only disposition made of any of the property was the personal property therein awarded to the wife. The defendant was left in possession of the remaining personal property and of the ranch, and commanded to there stay, labor, and pay the indebtedness and alimony.

Although the defendant defaulted in the divorce case he was present at the hearing.

It is clear to my mind the plaintiff and defendant erroneously regarded the real and personal property named in the complaint as community property, and had the decree adjudged a division thereof equally between the parties, although not necessarily in kind, it would have been binding on the parties.

The contention of the defendants in this case that the complaint in the divorce action did not put the title to the property in issue is so clearly erroneous, in my opinion, as not to merit the citation of authority.

Due to failure of the judgment to adjudge the status of the ranch in its decretal part, we have the same situation as in Dunham v. Stitzberg, 1948, 53 N.M. 81, 96, 201 P.2d 1000, where a finding in the probate court that a named party was the sole heir of the deceased was not incorporated into the decretal part of the judgment, and was held to be of no force and effect in subsequent litigation involving the ownership of the property. So the title to the ranch could be litigated anew without regard to the findings of fact and conclusions of law relating thereto in the divorce case.

The claim is made by the plaintiff that the deed to the real estate in which Hicks was the grantee was delivered when she and Hicks were husband and wife; that,

therefore, the land was community property.

It is true the deed to the ranch was received while the marriage relation existed, but the inception of the title was the purchase contract executed in the year previous to the marriage between Hall as seller and Hicks as the purchaser, at which time Hicks paid $800 on the contract price. According to the findings of the trial court an additional payment of a like amount was made during the existence of the marriage relation, but the money came from the sale of livestock which was the separate property of Hicks. Hicks and wife, it is true, borrowed $3,400 from the Federal Land Bank of Wichita, giving a mortgage on the ranch as security, but this loan was repaid from earnings of Hicks after the divorce decree was entered.

The defendant cites many Washington cases holding the time of the delivery of the deed and not that of the execution of the contract determines the question of whether the property acquired is separate or community property, but we are committed to the doctrine that the time of the initiation of the right determines the status. McDonald v. Lambert, 1938, 43 N.M. 27, 85 P.2d 78, 120 A.L.R. 250, and other cases cited in the opinion of Mr. Justice LUJAN. This is true even though a major portion of the purchase price is thereafter paid with community funds, the spouse owning

the separate property being, however, indebted to the community for such advance. McElyea v. McElyea, 1945, 49 N.M. 322, 163 P.2d 635; Laughlin v. Laughlin, 1945, 49 N.M. 20, 155 P.2d 1010.

In Texas if the community credit is used as security for the unpaid purchase price of real property where one spouse has made the down payment with separate funds, the community owns a proportionate interest therein, but such is not the rule here.

The ranch was in fact the separate property of the husband, Hicks.

Nor can we agree with the contention of the plaintiff the ultimate result reached by the trial court was based on inadmissible evidence. It held paragraph 5 of the decree ambiguous, and with this conclusion we agree. In fact, the decree adjudged the status of only the personal property awarded to the wife. To have stopped with the introduction of the decree, or even the pleadings in the divorce case would have left the case up in the air, due to the failure of the trial court in the divorce case to adjudge the status of the ranch as above pointed out.

It is true the introduction of testimony went beyond the limits fixed by the pretrial order, but this sacred cow of the First Judicial District Court named "pretrial" may occasionally be violated when the ends of justice so require, and her despoiler

escape punishment, provided an objecting litigant is not denied the right to attempt to repair the damage, if any, on application seasonably made. As heretofore indicated, when the decree in the divorce case failed to adjudge the status of the ranch and finding of fact No. 3 in the decree became functus officio or dead, testimony showing its true status was admissible.

I am of the opinion the disposition of this appeal is controlled by what I have said above, and I therefore concur in the affirmance of the judgment.