502 P.2d 292

**Mary Ann SPARKS, Plaintiff-Appellee,**

v.

**Howard H. SPARKS, Defendant-Appellant.**

**No. 9474.**

Supreme Court of New Mexico.

Oct. 20, 1972.

268

Kastler & Erwin, Raton, for defendant-appellant.

Robertson & Robertson, Raton, for plaintiff-appellee.

## OPINION

McMANUS, Justice.

This suit was brought in the District Court of Colfax County, New Mexico, for a divorce, for declaration of property rights and for a division of the property, all of which was accomplished. The husband now appeals from parts of the declaration of property rights and from the method of division of property. We are presented with these questions: (1) Was there sub-stantial evidence to support the decision of the trial court that the wife made contributions totaling $10,777.23 from her separate property to assets held by the community, and (2) was the property distributed correctly? We answer both questions in the affirmative.

The court declared certain property to belong separately to the wife, other property to belong separately to the husband, and still other property to belong to the community. But the court also decided that the wife should have a gross equitable lien against the community property for $10,777.23. The purpose was to reimburse the wife from community assets for contributions made from her separate property. Because community funds of $3,837.82 were expended during the marriage toward the retirement of a mortgage on the wife's separate real estate, this amount was deducted from the gross lien. The net amount due the wife was, according to the court's decision, $6,939.41. The husband believes that the wife should have been credited with contributions of $6,750.00, not $10,777.23, and appeals from the difference of $4,027.23, claiming there is not substantial evidence to support that part of the judgment.

In holding that there was a net contribution of $6,939.41 from the wife's separate property to the assets of the community the trier of facts undoubtedly laid emphasis on the following questions and answers propounded to the wife:

"Q Now, referring generally, to the withdrawals made between April of '66 and November '68, you said you didn't recall precisely what those constituted. Do you have a general recollection as to what was done with money drawn from this account?

"A All the money that was withdrawn was used at one time or another to buy stock, some was used to buy horses or things that we needed in our home.

"THE COURT: By, 'stock,' you don't mean cattle, you mean corporate stock?

"THE WITNESS: Yes, corporate stock, bonds.

"MR. ROBERTSON: Q Is it possible that some of this may have gone into the purchase of shares in Gate City Building and Loan, or do you recall?

"MR. KASTLER: Well, I object, that calls for a speculative answer.

"MR. ROBERTSON: Q I ask you, if you recall whether or not some of this may have been invested in that form? If you don't remember—

"THE WITNESS: A (Int.) I don't know, though, I don't recall.

"Q According to the best of your recollection, were these withdrawals made just for general living expenses?

"A No."

Further along, the court itself propounded questions of the wife, as follows:

"THE COURT: Is it your recollection also, that whenever any check— Whenever any money was withdrawn from the Citizen's State Bank account, it was done for a specific purpose of buying a specific capital asset?

"THE WITNESS: That is correct.

"THE COURT: And thereupon, a check was then drawn from that account for that capital asset?

"THE WITNESS: That is correct.

"THE COURT: Whether it's the down payment on the house, or whether it's stock, or the pickup truck?

"THE WITNESS: Yes.

"THE COURT: That is what you understand?

"THE WITNESS: Yes.

"THE COURT: And what you have tried to testify about this morning?

"THE WITNESS: Yes.

"THE COURT: That is all."

█ Thus the wife testified, in response to questions from her attorney and from the court, that the withdrawals went into assets held by the community. That testimony was supported by evidence, to which the husband agreed, that $6,750.00 in contributions were actually made as follows: $3,000 toward the down payment for a house in which the parties resided; $750 toward the purchase of a pickup truck; $3,000 toward purchases of corporate stock. We believe that this evidence was substantial and we affirm the trial court's decision in this regard.

█ Rather than attempt to award a particular $6,939.41 in community property to the wife for the purpose of satisfying her lien and rather than requiring the husband to pay to the wife $6,939.41 in cash, the trial court adopted another method of distribution that seemed fair and sound under the circumstances. The court simply distributed the total amount of community property in such a way that two objectives were achieved: (1) the wife received property of the value of $6,939.41 which satisfied the lien and (2) the wife and the husband received a division of the remaining community property. However, the wife's share of community property was apparently $1,800 less than the share received by the husband. The husband believes that this difference constitutes error. We do not agree. The court's decree apportions the property upon the criterion, among others, of its suitability for the needs of the parties. There is no requirement that each party receive exactly the same dollar value, assuming that could ever be accomplished,

as long as the general method described in Campbell v. Campbell, 62 N.M. 330, 310 P.2d 266 (1957), is followed:

"* * * the community property shall be equally apportioned between them in the lower court by a method of division best suited under all the circumstances."

The wife agrees that this has been accomplished, even though the dollar value she received was somewhat less than that which the husband received. The actual property that both parties were awarded was especially suitable for the needs of each and the dollar value appeared to be as equal as possible under the circumstances.

The judgment of the trial court is affirmed.

It is so ordered.

COMPTON, C. J., and MONTOYA, J., concur.