680 P.2d 635

**Frances Nell LECKIE,
Petitioner-Appellee,**

v.

**Myrle C. LECKIE,
Respondent-Appellant.**

**No. 7334.**

Court of Appeals of New Mexico.

April 10, 1984.

Theodore R. Johnson, Williams, Johnson & Darnell, Hobbs, Sarah Michael Singleton, Santa Fe, for respondent-appellant.

Don Maddox, Maddox & Renfrow, Hobbs, for petitioner-appellee.

**OPINION**

WOOD, Judge.

The property of the parties was divided in connection with their divorce. Husband (Myrle) appeals. There are two issues: (1) valuation of the husband's pension; and (2) imposition of a community lien on separate property. We reverse on both issues.

**Valuation of the Pension**

It is undisputed that $326.01 of the husband's monthly pension benefit was community property.

The retirement plan provided that the retirement benefits would be paid until the husband's death. However, if the husband died within ten years of retirement, a named annuitant would be paid the benefits up to ten years after the husband's retirement date. The husband retired April 30, 1974; the assured payment of ten years expires on April 30, 1984.

In dividing the property in May 1983, the trial court found that the husband had a life expectancy of 120 months and that the community had an interest of approximately $40,000.00 in the husband's retirement benefits. This approximation is reached by multiplying $326.01 by 120. The question of dividing the community property interest in the pension on a "pay as it comes in" system, *see Copeland v. Copeland*, 91 N.M. 409, 575 P.2d 99 (1978), was presented to, and rejected by, the trial court. No issue of a monthly division is presented in the appeal.

In dividing the property, the trial court utilized the $40,000.00 amount. The husband asserts this was an incorrect valuation because this was the total amount to be paid over the husband's life expectancy. Specifically, the husband contends that the trial court erred in failing to reduce this total to present value. In the trial court, the husband urged that the total amount should be discounted at five percent and that the present value of the community interest in the pension, at the time of division, was $24,432.05. We are not concerned with the accuracy of either the trial court's or the husband's arithmetic. The issue is whether the community interest in the pension should have been reduced to present value.

The husband relies on *Copeland* and *Ridgway v. Ridgway*, 94 N.M. 345, 610 P.2d 749 (1980). *Copeland* holds that either the present value of a community interest in a vested but unmatured pension should be utilized in the division of assets or that the pension should be divided as it comes in. In *Ridgway*, the husband had a vested, unmatured interest in his employer's profit-sharing plan. This plan had no ascertainable future benefit; this future benefit depended upon the success or failure of the business operation. Because there was no ascertainable future benefit, present value could not be determined. "Under these particular facts, the trial court correctly used the undiscounted *current, actual value* of the plan at the date of the divorce." *Id.* at 347, 610 P.2d 749 (emphasis in original).

Wife (Frances Nell) points out that neither *Copeland* nor *Ridgway* involved a "matured" pension. The husband's pension plan is matured; he has been receiving benefits since his retirement in 1974. *See Copeland.* The wife suggests the "present value" requirement need not be followed in dividing matured pension benefits.

*Ridgway* states:

In *Copeland, supra,* this Court did not state an inflexible rule that trial courts could apply only the *present value* method and no other. Under *Copeland,* the trial courts must, in divorce actions where a state retirement plan is part of community property, apply the present value method where that value is ascertainable by substantial evidence. On the other hand, if present value cannot be ascertained, then *current, actual value* may be applied by the court. Profit sharing plans fall within the rule announced in *Copeland* . . . .

*Id.* at 347, 610 P.2d 749 (emphasis in original).

The valuation of matured pension plan benefits also comes within the rule announced in *Copeland.* In so holding, we have not considered that pension payments will cease upon the husband's death after April 30, 1984; that upon the husband's death after that date the pension plan has zero value. This prospect is not considered because the husband does not challenge the propriety of valuing his pension benefits on the basis of a 120-month life expectancy. What we do consider is that the benefits are to be paid monthly, in the future. The trial court considered those future payments as if they had already been received. On cross-examination, the wife, who admitted she was an accountant, agreed that multiplying the community interest in the pension by life expectancy gave "future value"; that to arrive at value as of the date of division, this future value would have to be discounted. If not discounted to present value, the valuation is overstated in that the earning power of money has not been considered. *See* footnote 1 to *Ridgway.* The present value approach, moreover, is consistant with NMSA 1978, UJI Civ. 18.22 (Repl.Pamp.1980), which requires a jury to reduce certain future damages to present value.

Citing *Michelson v. Michelson*, 89 N.M. 282, 551 P.2d 638 (1976), for the view that each case must be decided upon its own merits, the wife asserts that the trial court did not err in utilizing future value rather than present value. According to the wife, the use of the undiscounted $40,000.00 future value should be affirmed because this

use accomplished substantial justice. *Michelson* involved the problem of determining whether the husband's interest in a corporation was separate or community property. That is not a problem in this case; the community interest is not disputed. Nor is the extent of the community interest a problem. *See Portillo v. Shappie*, 97 N.M. 59, 636 P.2d 878 (1981). The community interest is $326.01 each month that the pension is paid. Our limited problem is how that community interest is to be valued in dividing the property. Substantial justice is not achieved by overvaluing that interest in dividing the property.

The trial court erred in failing to reduce the future value of the community interest in the pension to present value.

### Community Lien on Separate Property

Prior to marriage, both parties owned separate property. The trial court found that during the marriage the community had acquired an interest, to the extent of $20,000.00, in the separate property of each spouse. It offset their community liens in dividing the property. The monetary amount expended on the husband's separate property is not contested.

The rents from the husband's separate property went into a joint account of the parties. Expenditures from this account included the $20,000.00 expended on the husband's separate property. Other expenditures from this account were on behalf of the community. There are some testimonial differences as to the total amount of rent money deposited in the joint account. However, there is no testimonial conflict that the rent money deposited *exceeded* the money expended on the husband's separate property.

There is no issue as to the community's use of rent money, from the husband's separate property, for matters not involving the separate property. However, the expenditure of $20,000.00 on the separate property came from the rent money received from the husband's separate property. On this basis, the husband claims the trial court erred in imposing a $20,000.00 lien on his separate property.

On the basis that the $20,000.00 expended was community funds, the husband contends that this amount is to be offset by the rental income, which was separate property. There is no claim that the rental income was somehow transmuted into community property upon being deposited into the joint account. Thus, we decide the offset issue on the assumption that the community received separate funds from the husband, and expended community funds on the husband's separate property. In this situation, the equitable considerations stated in *Laughlin v. Laughlin*, 49 N.M. 20, 155 P.2d 1010 (1944) apply.

In *Laughlin*, the farm was the separate property of the wife. The community received all of the proceeds of the farming operation. "This included the appellee's [wife's] separate funds, to be measured by the rental value of the farm." In this case, the property was the separate property of the husband, the community received all of the rental income which was the separate property of the husband. *Laughlin* states: "If the community is entitled to receive any remuneration for the payment of the mortgage debts, the community must do equity and give appellee credit for her funds ...." *Id.* at 40, 155 P.2d 1010. *See also Portillo v. Shappie; Hayner v. Hayner*, 91 N.M. 140, 571 P.2d 407 (1977); *compare Chance v. Kitchell*, 99 N.M. 443, 659 P.2d 895 (1983).

Another way of viewing this issue is that the rental income which was the husband's separate property, retained its character as separate property when deposited in the joint account, and that expenditures from that account on the husband's separate property were expenditures of the husband's separate property. *See Corley v. Corley*, 92 N.M. 716, 594 P.2d 1172 (1979). Under this view, no community funds were expended on the husband's separate property.

◼ The evidence is uncontradicted that the community received a net benefit from the rental income from the husband's separate property. *See Corley.* Whether the

legal issue is considered to be the propriety of a community lien or the tracing of separate funds, the result is the same. Under either view, the trial court erred in its ruling.

The finding that the community had an interest of approximately $40,000.00 in the husband's retirement benefits is reversed. The finding of a community interest of $20,000.00 in the husband's rental property in Carlsbad is reversed. The judgment dividing the property, which is based on these findings, is erroneous. The cause is remanded with instructions to vacate the judgment and to proceed in accordance with this opinion.

No attorney fees were requested in the appeal and none are awarded. The husband is to recover his appellate costs.

IT IS SO ORDERED.

HENDLEY and ALARID, JJ., concur.