684 P.2d 1169

**Anne T. MADRID, Petitioner-Appellee,**

**v.**

**Lilly L. MADRID, Personal Representative of the Estate of Manuel L. Madrid, Respondent-Appellant.**

**No. 7543.**

Court of Appeals of New Mexico.

June 19, 1984.

Mick I. R. Gutierrez, Las Cruces, for petitioner-appellee.

Suzanne E. Jollensten, Foy, Foy & Jollensten, P.A., Silver City, for respondent-appellant.

**OPINION**

NEAL, Judge.

This case concerns the division of property after a divorce. We discuss the value of pension benefits, disposition of the house, and the effect of the wife's untimely filing of her cross-appeal.

Manuel Madrid (husband) began working for Kennecott Copper Corporation in 1939. He and Anne Madrid (wife) were married in 1950. He retired in 1971 and the parties were divorced in 1980. The husband died in 1982; the appeal is brought by his personal representative (estate).

The court awarded the wife the marital residence and lot, valued at $30,000; household furnishings, and her social security benefits. The court awarded the husband a car and a truck, his social security benefits, and his Kennecott pension benefits. The property division was appealed to the Supreme Court which, in an unpublished decision, remanded the case to the district court for a determination of the discounted present value of the pension. *See Copeland v. Copeland,* 91 N.M. 409, 575 P.2d 99 (1978). *See also Leckie v. Leckie,* 101 N.M. 254, 680 P.2d 635 (Ct.App.1984).

The major issue in this appeal concerns an issue not addressed in the Supreme Court decision: At what point is the pension valued?

**1. Value of the pension.**

The parties stipulated that on February 4, 1980, the date of the divorce, the husband was receiving $215.23 per month in pension benefits. Negotiations between the company and the union resulted in increased benefits for retired employees, and in January 1981 the husband began receiving $245.36 per month. In January 1982, the husband began receiving $275.49 per month.

The decision of the district court, on remand, was filed November 14, 1982. In that decision, the district court valued the pension based on the monthly benefit of $275.49. The estate contends that the pension should be valued using the monthly benefit of $215.23, which the husband was receiving at the time of the divorce. We agree.

In holding that the pension must be valued at the time of the divorce we rely on *Copeland v. Copeland* and *Hurley v. Hurley,* 94 N.M. 641, 615 P.2d 256 (1980). *Copeland* states:

> The cases are in agreement that *at the time of the divorce the court must place a value on the pension rights* and include it in the entire assets, then make a distribution of the assets equitably.

*Hurley v. Hurley* concerned the value of a doctor's practice, and held that "the value of the practice as a business *at the time of dissolution of the community* is community property." (Emphasis added.) The rule concerning the valuation of community property in *Copeland* and *Hurley* is a corollary of the general rule that divorce dissolves the community. *See* 15 Am.Jur.2d *Community Property* § 101 (1976).

The increases, coming after the date of the divorce, are the husband's separate property. "Separate property" means property "acquired ... after entry of a decree of dissolution of marriage." NMSA 1978, § 40-3-8(A)(1) (Repl.Pamp.1983). "The word 'acquired' contemplates inception of title." *Hollingsworth v. Hicks,* 57 N.M. 336, 258 P.2d 724 (1953). At the time of the divorce the increases were not even in existence. The increases, coming after the divorce, were not "acquired" until after the divorce, and were the separate property of the husband.

**2. The husband's separate contribution to the pension plan.**

The trial court did not give the estate credit for the husband's contribution to the pension plan made before marriage. The estate contends this was error. However, the Supreme Court decision states:

> Manuel Madrid also contends that the portion of his pension earned prior to marriage should be considered his separate property. *LeClert v. LeClert,* 80 N.M. 235, 453 P.2d 755 (1969). The record indicates, however, that he failed to present evidence as to when the pension plan was instituted and the amount or proportion of contributions made prior to his marriage. The trial court was justified in determining he failed to meet his burden of proof. *Ohl v. Ohl,* 97 N.M. 175, 637 P.2d 1230 (1981).

This is the law of the case, *Varney v. Taylor,* 79 N.M. 652, 448 P.2d 164 (1968), and the Supreme Court having decided the issue, we are bound by its disposition. *Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973).

**3. Disposition of the house.**

The court awarded the parties' home and lot to the wife. To apportion the community more equitably the court awarded the estate a lien on the house of $4815.00, plus interest of 10% per year. The judgment states that the lien would be paid "in whole or in party by the Petitioner [wife] at any time or upon her death or sale of the property." The estate contends that it should receive its interest "within a reasonable time." At the remand hearing the estate requested that the house be sold.

We review the disposition of community realty for an abuse of discretion. *Cunningham v. Cunningham,* 96 N.M. 529, 632 P.2d 1167 (1981); *Chrane v. Chrane,* 98 N.M. 471, 649 P.2d 1384 (1982); *Hertz v. Hertz,* 99 N.M. 320, 657 P.2d 1169 (1983). In the initial appeal the Supreme Court stated that in apportioning community property the court must consider the needs of the parties in light of all the circumstances. *Laughlin v. Laughlin,* 49 N.M. 20, 155 P.2d 1010 (1944). In its decision the Supreme Court noted that the wife was seriously ill and incapacitated. Since the initial appeal the husband has died. At the remand hearing the court said that the wife "didn't look too good." Considering that the wife was ill and living on a marginal income, and that the husband had died, the court did not abuse its discretion when it refused to order that the house be sold or that the estate should receive its interest within a reasonable time.

**4. The late cross-appeal.**

The wife's cross-appeal mainly concerns the trial court's failure to include a $2700.00 car in the community. Notice of cross-appeal would have been timely if filed by December 5, 1983. *See* NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.R. 202(a) (Repl.Pamp. 1983). The notice of appeal was filed on November 23, 1983, but the notice of cross-appeal was not filed until December 8, 1983.

In the calendar assignment for the cross-appeal the parties were directed to brief the issue of whether the late filing of the cross-appeal deprived this court of jurisdiction to consider it. The parties did not brief the issue, apparently relying on an extension of time granted by the trial court

on December 28, nunc pro tunc as of November 30. However, the nunc pro tunc order, entered more than forty days after the judgment was filed on November 14, 1983, is ineffective. *Gonzales v. City of Albuquerque,* 90 N.M. 785, 568 P.2d 621 (Ct.App.1977). The cross-appeal is dismissed. *Jones & Laughlin Supply v. Dugan Production Corp.,* 85 N.M. 51, 508 P.2d 1348 (Ct.App.1973).

In light of our decision reducing the valuation of the pension the trial court may want to increase the lien on the house to arrive at a more equitable disposition. The case is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

ALARID, J., concurs.

DONNELLY, C.J., dissents.

DONNELLY, Chief Judge (dissenting).

I disagree with the majority decision which reverses the trial court's apportionment of pension benefits.

The key issue involved in this appeal concerns the rights of the parties to an increase in the amount of pension benefits accruing after the granting of a divorce. The court granted a divorce to the parties on February 4, 1980, but in the same case expressly reserved jurisdiction to divide the community property and adjudicate the debts of the parties. Subsequently, the court entered an order *inter alia* awarding the parties' home to the wife, finding that it had an appraised value of $30,000, and awarding to the husband his benefits in a Kennecott pension payable in the sum of $215.23 per month.

The husband appealed from the trial court's division of community property. The supreme court reversed, ordering that the judgment dividing the property be vacated, that the trial court determine the present value of the pension, and "for further consistent proceedings if any are needed." The supreme court mandate was issued January 3, 1983. Increases in the amount of the pension benefits were effected in January, 1981, to $245.36, and again in January, 1982, to $275.49.

On remand the parties stipulated that the present value of the Kennecott pension was $20,370 as of February 4, 1980. A judgment was entered on November 14, 1983, awarding the pension to the husband but allowing the wife credit for one-half the value of the increase in pension benefits which accrued in January, 1981, and January, 1982.

Under these circumstances, where the court has dissolved the marriage relationship but has reserved jurisdiction in the same case to divide the community property of the parties, I believe the court under its equitable powers, has the authority to give the wife credit for a portion of the increases in pension benefits and which accrued after the entry of the partial decree of divorce but prior to entry of a final decree adjudicating the property interests of the parties.[1]

The decisions in *Copeland v. Copeland,* 91 N.M. 409, 575 P.2d 99 (1978) and *Hurley v. Hurley,* 94 N.M. 641, 615 P.2d 256 (1980), *overruled on other grounds, Ellsworth v. Ellsworth,* 97 N.M. 133, 637 P.2d 564 (1981), were factually distinguishable from the situation here because in those cases the decrees granting the dissolution of the marriages were final orders.

The instant case is similar to *Ellett v. Ellett,* 94 Nev. 34, 573 P.2d 1179 (1978), decided by the Nevada Supreme Court. In

1. In apportioning community property between the parties, a court must consider the needs of the parties in light of all the circumstances, to determine an equitable apportionment. *Laughlin v. Laughlin,* 49 N.M. 20, 155 P.2d 1010 (1944); *Campbell v. Campbell,* 62 N.M. 330, 310 P.2d 266 (1957); *Michelson v. Michelson,* 86 N.M. 107, 520 P.2d 263 (1974), *rev'd in part on other grounds,* 89 N.M. 282, 551 P.2d 638 (1976); *Sparks v. Sparks,* 84 N.M. 267, 502 P.2d 292 (1972); and *Ridgway v. Ridgway,* 94 N.M. 345, 610 P.2d 749 (1980).

*Ellett,* the trial court entered a partial decree of divorce on January 29, 1976, which terminated the marital relationship; however, the court expressly reserved jurisdiction to issue a subsequent decree regarding the division of community property and community debts, and the award of alimony. The supplemental decree adjudicating the property rights of the parties was entered approximately three and one-half months later. In the interval between the award of the divorce and the time of entry of the order dividing the community property, additional pension benefits accrued in the husband's retirement fund benefits.

The court in *Ellett* held that it was not error for the trial court to award the wife an interest in the retirement fund benefits which accrued after the date of the supplemental decree of divorce, despite the fact that the marital relationship had been terminated by a partial decree of divorce entered several months earlier. The court stated:

> [Husband] does not question the trial court's division of the nonvested retirement rights, thereby implicitly acknowledging the propriety thereof, *see, In re Marriage of Brown,* [15 Cal.3d 838] 126 Cal.Rptr. 633, 544 P.2d 561 (Cal.1976), however he does contend that it was error to credit respondent with the additional approximate four months' equity in the benefits plan. [Footnote omitted.]
>
> Much of appellant's error in this contention rests on his misconception of the partial decree [of divorce] as a final judgment. We need not reach the issue of the trial court's claimed departure from NRS 125.150(3), since NRS 125.150(1) in relevant part empowers the trial court to "make such disposition of the community property of the parties, as appears just and equitable," *and the January decree being interlocutory by its express terms reserved jurisdiction of respondent's community interest in the retirement rights pending final adjudication of the parties rights following the May proceeding.* Ormachea v. Ormachea, 67 Nev. 273, 217 P.2d 355 (1950). *An order or judgment which reserves a question for future consideration and determination is interlocutory and is not a final judgment.* [Emphasis added.]

Where a decree of divorce is entered and the court does not adjudicate the interests of the parties in the community property and community debts, but expressly reserves jurisdiction to subsequently make such apportionment, rights of the parties to any increases in the value of property in which the parties held interests do not terminate as of the date of divorce; only the nature of the interests of the parties in the property is transmuted.

Generally, if a court reserves jurisdiction to make further adjudications in the same case, the judgment is only interlocutory. *Ellett v. Ellett; Saul v. Basse,* 399 So.2d 130 (Fla.App.1981). Where a trial court enters an order or decree granting a divorce, and reserves the right to adjudicate the respective property interests of the parties, but fails to make an express determination that there is no just reason for delay in entering the decree of divorce, the order is not final. Absent such express determination, any order or decision, however designated, which adjudicates fewer than all the claims is not a final order and does not terminate the action. The order or decision is subject to revision at any time before the entry of a judgment adjudicating the remainder of the claims. NMSA 1978, Civ. P.R. 54(b) (Repl.Pamp.1980).

Since there existed a community interest in the pension prior to the divorce, and no division of property was effected at the time of the dissolution of the marriage, the wife continued to retain her interest in the pension. *Cf. Hickson v. Herrmann,* 77 N.M. 683, 427 P.2d 36 (1967); *Harris v. Harris,* 83 N.M. 441, 493 P.2d 407 (1972). The provisions of NMSA 1978, Section 40–4–20 (Repl.Pamp.1983) would seem to accord further support to this concept. *See*

*also* NMSA 1978, § 40-3-8(A)(6) (Repl. Pamp.1983).[2]

I would affirm the trial court's ruling.

2. Increases in pension benefits would also accrue to both spouses where the trial court has ordered a percentage division of the pension between the parties on a "pay as it comes in basis" under one of the options recognized in *Copeland v. Copeland,* 91 N.M. 409, 575 P.2d 99 (1978). *See also Leckie v. Leckie,* 101 N.M. 254, 680 P.2d 635, 23 SBB 579 (Ct.App.1984) and J.N. Rozsman, *Distribution of Pension Benefits: Time Runs Out on the Time Rule,* 10 Pac.L.J. 847 (1979). Similarly, both parties may be entitled to subsequent increases in pension benefits where the parties have expressly contracted in a property settlement agreement governing rights in the pension or any increases thereto. *See Parks v. Parks,* 91 N.M. 369, 574 P.2d 588 (1978).