**Certiorari Granted, February 2, 2010, No. 32,162**

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2010-NMCA-014**

**Filing Date: October 30, 2009**

**Docket No. 28,106**

**LINDA JOYCE GARCIA,**

 **Petitioner-Appellee,**

**v.**

**JERRY M. GARCIA,**

 **Respondent-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ernesto J. Romero, District Judge**

Mary E. Chappelle
Albuquerque, NM

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellee

Atkinson & Kelsey, P.A.
Thomas C. Montoya
Albuquerque, NM

for Appellant

### OPINION

**SUTIN, Judge.**

**{1}** This case involves enforcement of a 1994 marital settlement agreement and a 1995 domestic relations order relating to a wife's entitlement to a husband's retirement benefits. We are mainly

1

concerned with two issues, namely, (1) when the wife was entitled to begin receiving benefits, and (2) how to calculate the amount of benefits to be paid to the wife. Based on its interpretations of the documents, the district court determined that the wife was entitled to receive benefits starting at the husband's first retirement eligibility as opposed to his actual retirement. The court also determined that the benefits should be calculated based on the husband's average salaries at the time of retirement eligibility as opposed to at the time of the divorce. We hold that the court did not err, and we affirm.

## INTRODUCTION TO THE CASE

{2}     By way of introduction, we note the circumstances underlying the issues before us. The parties did not talk to each other about calculation of retirement benefits when they signed their marital settlement agreement. The agreement passed between their attorneys, and there is no indication that the attorneys specifically discussed with their clients how each share would be calculated or specifically discussed the point in time when the non-employee recipient would begin receiving the monthly distribution of her share of the benefits. There is no evidence that either spouse formed any particular intention at the time of the marital settlement agreement with respect to the when and the how-much aspects of the distributions. The attorneys prepared and the parties agreed to retirement benefits provisions that were ambiguous—both as to when the non-employee spouse was to begin receiving her monthly distribution of her community share and as to how her community share of the employee-spouse's benefits was to be calculated.

{3}     These unfortunate circumstances became significant hurdles when, years after the divorce occurred, the non-employee spouse raised issues as to when she should have begun to receive payments and how much she should receive. In the district court, the case became a procedural morass and this complicated resolution of the issues. Ultimately, the parties argued for their respective, differing view of language in the documents. The district court chose the non-employee-spouse's view. In wrestling with an unsatisfactory history, we have treated the appeal narrowly as one involving whether the district court erred in its interpretation of ambiguous language in controlling documents. With the foregoing introduction in mind, we now turn to the background and specific issues in the present case.

## BACKGROUND

{4}     Linda Joyce Garcia (Wife) and Jerry M. Garcia (Husband) were married in August 1978. They entered into a marital settlement agreement (MSA) on September 20, 1994. The MSA was incorporated by reference into and approved by a judgment and final decree of dissolution of marriage filed October 20, 1994. When we refer to "the MSA" in this opinion, we mean both the MSA and the judgment and final decree. Husband was first eligible to retire after December 11, 2005, when he reached thirty years of service with the United States Postal Service and age fifty-five. The thirty years of service were a combination of Husband's service before marriage and after divorce, and community service during marriage.

**Provisions of the MSA and Domestic Relations Order**

{5}     In Section II(A)(5) of the MSA, as part of the parties' compromised distribution of the community property, Wife was to receive the following as her separate property.

> One-half of the community interest in Husband's retirement plan with [the] United States Postal Service through the date of August 31, 1994, to be determined in accord with the following formula:

$$d = \frac{ab}{2c}$$

> where:     a = Husband's gross monthly retirement benefits;
>
> b = Months of credited service from August 9, 1978, through the date of August 31, 1994, a total of 192 months[;]
>
> c = total number of months of credited service at retirement (unknown at this time);
>
> d = Wife's interest.

In Section II(B)(4) of the MSA, Husband was to receive "[o]ne-half of the community interest in his retirement plan . . . and all of the interest he accrued in his retirement plan prior to the marriage and subsequent to August 31, 1994."

{6}     The domestic relations order filed in March 1995 dividing Husband's civil service retirement benefits provided that the retirement benefits accrued by Husband during the marriage to the date of the divorce were community property. The order also provided that Wife was entitled to receive her share of the benefits directly from the plan administrator. The order further provided that Wife was entitled to her portion of Husband's retirement benefits based on a formula set out in the order that was similar to that in Section II(A)(5) of the MSA. The formula stated:

> $D = 50\%$ of $A \times \dfrac{B}{C}$ where
>
> A =     [Husband's] gross monthly retirement benefits[]
>
> B =     192 months
>
> C =     Total number of months of creditable service employment of [Husband] at his retirement[]
>
> D =     [Wife's] share

**Wife's Motion to Enforce the MSA and Husband's First Appeal**

**{7}**     In March 2006, Wife asked the court to enforce her interest in Husband's retirement and to award accrued pre-retirement amounts.  At a July 19, 2006, hearing on enforcement of the MSA, Wife appeared with counsel and Husband appeared pro se.  Wife sought $590 in monthly payments as of December 11, 2005, which was the first eligibility date of Husband's interest in his retirement, and she also sought arrearages totaling $4425.  Wife's counsel presented a benefits calculation that was, in counsel's view, "pretty standard because typically . . . if you think of the numerator being the months of the marriage, the denominator being the entire time that the person earns the retirement, times one-half, then that's the community interest."  Wife's counsel explained the following to the court:

> [W]hat happens actually, in practice is . . . over time . . . the percentage that the former non-employee spouse receives gets lower because the fraction, since the numerator stays the same and the denominator gets bigger, her, it's usually the wife, her fraction of share actually gets smaller and smaller, the percentage goes down over time, but . . . the reason people negotiate this is, one they don't have a choice because there isn't enough money at the time they divorce and, and the second reason is typically the income goes up, as people receive promotions, hopefully in grade cost of living and so it's a smaller percentage times a higher monthly benefit amount.

Wife's counsel also indicated that the formula used "typically . . . included in most cases . . ., not only the marital settlement agreement, but it's also in the qualified domestic relations order, if there is one" and that the formula "was negotiated, it's in the [MSA]."  In addition, Wife's counsel explained:

> [W]e wrote in, in the formula, that the marital months were 192, according to my math [Husband] spent a total of 824 months earning this retirement. . . .  [S]o that with my math, came out to be 23.2 percent is [Wife's] share of the gross monthly annuity which would be $2533.  That's what he would have started receiving December 11 of 2005.  So, I calculated that [Husband] would be required to pay . . . [Wife] $590 per month.  That's 23.2 times 2533, . . . he should have been paying it since December.  [S]o he has accrued an arrearage of, for seven and a half months of retirement, . . . [Wife] should have received commencing December 11.  [A]nd . . . seven and a half months times the $590 is $4425.

**{8}**     During this July 19, 2006, hearing, the court inquired of Husband if he was going to have an attorney, to which Husband replied that he could not afford one but was in the process of coming up with the money to obtain one.  The court then inquired regarding the MSA, and Husband stated that he "agreed with the formula that they came up with."  When asked if he understood what that meant, Husband said, "I thought that was upon retirement."  In response to a statement by the court to Husband that under the current law, as represented by Wife's counsel, Wife was entitled to her benefits when Husband became eligible for retirement, Husband responded, "Okay."  In response to a statement by the court to Husband that under the case of *Ruggles v. Ruggles*, 116 N.M. 52, 860 P.2d 182 (1993), as it was represented by Wife's attorney, Wife was entitled to receive the amounts that Wife's attorney had represented earlier, and to a follow-up inquiry whether he understood that, Husband replied, "I understand that."  "[S]ympathetic to a degree" that Husband did not have an

4

attorney, the court indicated that if Husband chose to get legal counsel "to dispute that amount," Husband would have to have his attorney file a motion in that regard, suggesting that the court would not "go back and redo" the formula, but that perhaps "the figures that [Wife would] receive . . . would change."

{9}     In calculating what Wife was entitled to receive, the court used the figures presented by Wife's attorney. Following the hearing, also on July 19, 2006, the court issued a minute order requiring Husband to pay Wife $590 per month as her share of the retirement benefit commencing August 1, 2006. This amount was calculated based on what Husband would have received had he retired on December 11, 2005. Using the monthly $590 amount, the court also entered a judgment of $4425 for arrearages based on seven and one-half months of benefits that Wife was entitled to receive beginning December 11, 2005.

{10}     Husband obtained an attorney and filed a motion for rehearing on August 2, 2006, asserting that the court erred (1) because the MSA did not provide that Wife would receive any payment prior to Husband's actual retirement, and (2) because the $590 per month calculation violated Sections II(A)(5) and II(B)(4) of the MSA and the case of *Madrid v. Madrid*, 101 N.M. 504, 684 P.2d 1169 (Ct. App. 1984), by granting Wife a portion of Husband's retirement benefits earned after divorce.

{11}     The court set this motion for rehearing to be heard on October 5, 2006. On August 28, 2006, Husband filed a motion requesting the court to enter an order determining that the July 19, 2006, minute order was a temporary order until the court entered an order disposing of Husband's August 2, 2006, motion for rehearing. Husband expressed the concern that under Rule 1-059 NMRA the motion would be denied by operation of law on September 1, 2006, rendering the October 5, 2006, hearing moot. Husband filed a notice of appeal on October 2, 2006.

{12}     The court nevertheless held a hearing on October 5, 2006, on Husband's motion for rehearing. No record of this hearing is before this Court. In a July 25, 2007, hearing in the district court, Husband's counsel stated that in the October 5, 2006, hearing the court did not think it had jurisdiction, and it therefore declined to consider any aspect of Husband's motion for rehearing, including Husband's offer of proof on the appropriate calculation of benefits.

{13}     In Husband's October 2, 2006, appeal to this Court, he contended in his docketing statement that the district court incorrectly determined that Wife was entitled to benefits before his actual retirement and that the calculation of Wife's benefits was erroneous because the court did not determine the community interest in the retirement benefits as of August 31, 1994. Husband quoted portions of an exchange at the July 19, 2006, hearing between the court and Husband and portions of statements made by Wife's counsel. We issued a calendar notice proposing to reverse and remand for an evidentiary hearing on the issue of when Wife should begin receiving benefits and proposing to affirm on the issue regarding the calculation of Wife's benefits. Husband filed a memorandum in support of our proposed remand and in opposition to our proposed disposition with regard to the calculation. Wife did not file any memorandum. In his memorandum, Husband clarified his calculation argument by stating that the district court improperly included Husband's post-divorce pay increases in Wife's entitlement by applying Husband's gross monthly salary as if he had retired in December 2005 instead of the gross monthly salary he was receiving at the time of the divorce in August 1994, thereby giving a portion of Husband's separate property to Wife.

5

{14}     This Court issued a memorandum opinion in February 2007.  Based on silence in the MSA and upon *Ruggles*, and on our determination that the district court did not conduct a proper evidentiary hearing, we reversed the district court's July 19, 2006, minute order and remanded for an evidentiary hearing "to determine the intent of the parties as to when Wife is to begin receiving her portion of Husband's retirement benefits."

{15}     Although we had proposed in our calendar notice to affirm the district court's calculation of the benefits, in the memorandum opinion we did not expressly state that we affirmed the district court's benefit calculation.  Instead, this Court stated the following:

> We decline to address Husband's arguments as to benefit computation because they were not raised in the district court. . . .  The lack of analysis contained in the motion for rehearing and the failure of the district court to act upon the motion lead[s] us to conclude that the district court never considered the arguments set forth in Husband's motion for reconsideration and clarified in his memorandum filed with this Court.  As a result, Husband's arguments are not properly before us on appeal.

We expressed "no opinion as to the amount of benefits that would be due Wife if the district court should determine that Wife is entitled to begin receiving benefits before Husband retires."

**Remand From First Appeal**

{16}     On remand, the district court held an evidentiary hearing on July 25, 2007.  The court received testimony on the issue of intent of the parties as to when Wife was to receive her share.  The court found that Wife had a right that she did not waive to receive her benefits at Husband's earliest eligibility for retirement, which was in December 2005.  The court also addressed the calculation issue and adopted Wife's view of the appropriate calculation.  We separately discuss the court's handling of the two issues in more detail later in this opinion.

**Standard of Review**

{17}     "The question of interpretation of language and conduct (the question of the meaning to be given the words of the contract) is a question of fact where that meaning depends on reasonable but conflicting inferences to be drawn from events occurring or circumstances existing before, during, or after negotiation of the contract."  *C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 509, 817 P.2d 238, 243 (1991).  We review district court determinations for substantial evidence.  *See Salazar v. D.W.B.H., Inc.*, 2008-NMSC-054, ¶ 6, 144 N.M. 828, 192 P.3d 1205 ("On review, we will uphold the trial court's judgment if it is supported by substantial evidence."); *Landavazo v. Sanchez*, 111 N.M. 137, 138-39, 802 P.2d 1283, 1284-85 (1990) (stating that "[i]f substantial evidence supports a trial court's conclusion it will not be disturbed on appeal" and that the Court "examin[es] the record only to determine if there is substantial evidence to support the district court's ruling" (internal quotation marks and citation omitted)); *Britton v. Britton*, 100 N.M. 424, 430, 671 P.2d 1135, 1141 (1983) (stating that "[t]he standard [of] review on appeal is whether substantial evidence reasonably supports the factual determinations of the trial court").  We resolve factual disputes and indulge reasonable inferences in favor of the prevailing party.  *Las Cruces Prof'l Firefighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177 (filed 1996).  We review de

novo the court's resolution of an ambiguity in documents. *See Bd. of Educ. v. James Hamilton Constr. Co.*, 119 N.M. 415, 418, 891 P.2d 556, 559 (Ct. App. 1994) ("[A]n appellate court is not bound by a trial court's [legal] interpretation of a written document, where the interpretation rests solely upon the wording of the document." (second alteration in original) (internal quotation marks and citation omitted)); *see also State v. Duran*, 2005-NMSC-034, ¶ 19, 138 N.M. 414, 120 P.3d 836 (stating that the Court conducts review de novo "along with our review of any inferences the district court may have drawn from its factual findings" (internal quotation marks and citation omitted)). "The interpretation of a contract is an issue of law that we review de novo." *Mueller v. Sample*, 2004-NMCA-075, ¶ 8, 135 N.M. 748, 93 P.3d 769. We review the application of the law to the facts de novo. *Paz v. Tijerina*, 2007-NMCA-109, ¶ 8, 142 N.M. 391, 165 P.3d 1167.

## DISCUSSION

### I. The Issue of When Wife Was Entitled to Receive Benefits

### A. The July 25, 2007, Hearing

{18} In the July 25, 2007, hearing on remand on the issue of when Wife was entitled to receive benefits, Wife argued that Husband had the burden to show evidence of an agreement that would override the New Mexico law of community property and the application of *Ruggles*. The district court agreed. Husband could not recall whether he discussed his retirement with Wife. Husband testified that it was his understanding that Wife would receive her community share of his retirement benefits when he actually retired.

{19} While not disputing that he was eligible for retirement in December 2005 because he had thirty years of service and had reached age fifty-five, Husband testified and argued that no specific time or date of retirement had been set out in the MSA because at that time, under 5 U.S.C. § 8336 (1966, as amended through 2007), which was the applicable federal retirement law, retirement with benefits could have occurred either after becoming age fifty-five with thirty years of service or after becoming age sixty with twenty years of service. *See* 5 U.S.C. § 8336(a), (b). Husband argued that because of the applicable federal retirement law, the MSA stated "at retirement." Thus, he argued, the parties intentionally did not specify a time, the words "at retirement" meant exactly what they said, under *Ruggles* the MSA language controlled, and Wife was to receive her benefits beginning when Husband actually retired. Further, Husband indicated that the parties and their counsel knew at the time of the divorce that Husband could retire either at age fifty-five with thirty years of service or at age sixty with twenty years of service, and that this was why the MSA stated the date of retirement was "unknown at this time." Husband also argued that the MSA was "not negotiated around the table where everyone was present," that it was signed after "drafts were circulated," and that, therefore, there was no "meeting of the minds" as to when Wife would receive retirement benefits.

{20} The attorney who represented Wife in the 1994 dissolution proceeding testified that, at the time she drafted the MSA, she was aware of *Ruggles* and would not have allowed her client to sign a settlement that provided her with retirement benefits "if and when [Husband] chose to retire[.]" The attorney also testified that she used boilerplate language in drafting the MSA when stating that the MSA was drafted "pursuant to the laws of the State of New Mexico." Wife testified that her

7

expectation was that she would receive her share of the retirement benefits when Husband turned fifty-five and that Husband could not delay when she would receive her share based on his decision alone.

**{21}** The district court entered the following findings of fact related to the issue of when Wife was entitled to receive her share of the retirement benefits.

> 6. At the time of divorce and the entry of the MSA[,] both parties knew and anticipated that if [H]usband continued his employment under the civil service system he would be eligible for retirement when he reached age [fifty-five] on December 11, 2005.

> 7. During the marriage[,] Wife understood that at age [fifty-five] [H]usband would have sufficient age and years to retire from the Postal Service.

> 8. The division formula states that the total number of months of credited service were "unknown at this time[."] In fact the number of credited service months could have been impacted by any number of factors, including early retirement, vacation and leave credit, dismissal prior to age [fifty-five], and thus could not have been known with certainty. (See Husband's own statement in his initial [r]equested [f]indings of [f]act that Husband would be eligible at age [fifty-five] "assuming he continued his employment under the civil service system. . . [.]"[).] [(Emphasis omitted.)]

> 9. The [d]omestic [r]elations [o]rder [d]ividing [r]etirement [s]ystem [b]enefits entered March 28, 1995, specifically states at paragraph 4, page 3[] that the division is "pursuant to the community property law of New Mexico."

> 10. If Husband waits to pay Wife her retirement benefit until he actually retires, then he is in absolute control of when [W]ife receives her share of the community property.

> 11. Husband has failed to show by a preponderance of the evidence that there was any discussion, negotiation[,] or agreement that [W]ife would be paid her retirement only when he actually retired.

The court also entered the following conclusions of law.

> 3. The [c]ourt finds that [Wife] did not waive her right to receive her portion of . . . [H]usband's retirement benefit at [H]usband's earliest eligibility for retirement.

> 4. The parties did not expressly agree on the precise date that [H]usband would retire. However, the [c]ourt finds, through the testimony of the parties and other evidence presented on remand, that the parties anticipated and expected that [H]usband's retirement benefit would be distributed upon . . . [H]usband's earliest

8

date of retirement eligibility, not necessarily whenever [H]usband chose to retire. Not only does the [c]ourt find that the parties intended for [H]usband to retire on his earliest eligibility date, but that given the negotiations regarding division of [H]usband's retirement benefits were conducted during the anticipated divorce of the parties, to find otherwise would be unlikely, unfair[,] and unjust under the circumstances.

> 5.     Consistent with this ruling [H]usband should commence payment of the expected retirement benefits effective December[] 2005.

**{22}**     In holding in Wife's favor, the court had before it the federal law relating to Husband's retirement requirements, the testimony and argument at the hearing, and *Ruggles*, which indicated that a marital settlement agreement should be enforced as written and also that when the agreement is unclear as to when a non-employee spouse is to begin receiving retirement benefits, the court should order distribution upon maturity of the retirement plan.  116 N.M. at 67-68, 70, 860 P.2d at 197-98, 200.

## B.     The Present Appeal

**{23}**     In the present appeal, on the issue of when Wife was entitled to receive benefits, Husband argues that, unlike in the present case, the marital settlement agreement in *Ruggles* did not use the term "at retirement," whereas the MSA here plainly sets the time "at retirement."  Therefore, according to Husband, *Ruggles* required the court in the present case to enforce the MSA as written. We must reject this argument on the ground that the issue was settled in this Court's memorandum opinion in the prior appeal.  We determined that, as in *Ruggles*, the MSA was silent, if not ambiguous, as to when Wife was to begin receiving her share of the retirement benefits, and we therefore remanded for the district court to fill in a critical gap by conducting an evidentiary hearing as to when the parties intended that Wife would begin receiving her share of the retirement benefits. We will not revisit our previous ruling on that question.

**{24}**     Based on the July 25, 2007, hearing, the district court decided that Husband failed to carry his burden to show "that there was any discussion, negotiation[,] or agreement that [W]ife would be paid her retirement only when he actually retired."  The court did not make an express finding of intent of the parties.  However, the court found that if Wife were to wait until Husband actually retired to receive her benefits, Husband would be in absolute control of when she would receive her benefits.  The court therefore concluded that the parties anticipated and expected that the retirement benefits would be distributed at first retirement eligibility and that "to find otherwise would be unlikely, unfair[,] and unjust under the circumstances."

**{25}**     As discussed in *Ruggles*, a unilateral choice not to retire would impair the non-employee-spouse's interest in the retirement "because she would be deprived of immediate enjoyment and management of her community property." *Id.* at 61, 860 P.2d at 191 (commenting on *Gillmore v. Gillmore*, 629 P.2d 1, 4 & n.4 (Cal. 1981), where the court held that a non-employee spouse should begin receiving benefits at the date of retirement maturity rather than actual retirement and recognizing that "the timing of receipt and the control of an asset are important aspects of its value" (internal quotation marks omitted)).  We conclude that the district court's determinations based on

the MSA are supported by substantial evidence and are appropriate under the circumstances and under *Ruggles* to support the court's conclusion that Wife was entitled to receive her benefits beginning December 11, 2005.

**{26}** Husband nevertheless argues that language in the domestic relations order must be read to evidence an intent that Wife was to receive benefits only upon Husband's actual retirement because, pursuant to the domestic relations order, Wife was to receive her share of the benefits directly from the plan administrator and not from Husband. Therefore, according to Husband, because he has not yet retired, Wife's payment from the plan administrator can only occur when he actually retires. Husband does not indicate in his briefs, and in our review of the record we have not located, where he argued this rationale to the district court. We therefore do not address the rationale. *See Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987) ("To preserve an issue for review on appeal, it must appear that [the] appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court."). Although, because of the possibility of further review proceedings, we suggest that were we to address the issue we would likely disagree with it. The court could have concluded that the language in the domestic relations order was standard pre-*Ruggles* language that, if interpreted as Husband suggests, was inconsistent with the *Ruggles* policy against provisions that leave the employee spouse in control of when the non-employee spouse begins to receive his or her community share. Furthermore, there exists no indication in the record that this language in the domestic relations order was intended to impact Wife's right to receive benefits at first retirement eligibility. If anything, this language contributed ambiguity, and it was up to the district court to decide what the parties intended. Under these circumstances, "the court may award the non[-]employee spouse an amount payable by the employee spouse . . . equal to the share of the retirement benefit she would be entitled to receive if the employee spouse elected to retire." *Ruggles*, 116 N.M. at 67, 860 P.2d at 197.

## II. The Issue of Calculation of Wife's Retirement Benefits

### A. Preliminary Issue of Jurisdiction on Remand

**{27}** We address at the outset Wife's argument that Husband cannot raise the calculation issue in this appeal because the district court lacked jurisdiction and authority on remand to change the calculation as Husband requested. We review this issue de novo, as it involves a legal issue. *See Fed. Express Corp. v. Abeyta*, 2004-NMCA-011, ¶ 2, 135 N.M. 37, 84 P.3d 85 (filed 2003). Wife bases her position on her view that, in Husband's prior appeal, this Court did not consider Husband's calculation argument and that we remanded solely for the purpose of developing the intent of the parties on the issue of when Wife was to begin receiving retirement benefits. Wife relies on law-of-the-case and jurisdiction-on-remand doctrines. *See Hughes v. Hughes*, 101 N.M. 74, 75, 678 P.2d 702, 703 (1984) ("The . . . opinion in the prior appeal constitutes the law of the case. It is binding on the district court, and is to be referred to if there is any doubt or ambiguity regarding the mandate. Our mandate and opinion in the prior appeal set forth the full extent of the jurisdiction of the district court on remand." (citations omitted)); *State v. Gage*, 2002-NMCA-018, ¶ 21, 131 N.M. 581, 40 P.3d 1025 (filed 2001) (noting the "hard-and-fast rule that the law of the case established on appeal binds the district court on remand under the appellate court mandate"). *But see Reese v. State*, 106 N.M. 505, 507, 745 P.2d 1153, 1155 (1987) (stating the majority understanding of the law-of-the-case doctrine is that the doctrine "is merely one of practice or court policy, and not of inflexible law"

and "that appellate courts are not absolutely bound thereby, but may exercise a certain degree of discretion in applying it" (internal quotation marks and citation omitted)). This issue requires a look not only at our memorandum opinion in the prior appeal but at the proceedings in the district court and this Court leading up to issuance of that memorandum opinion.

{28}   It is clear that Husband failed to raise any error in the July 19, 2006, hearing in regard to the court's calculation of Wife's share of retirement benefits. Yet it is equally clear that the district court offered to reconsider the calculation issue if Husband obtained an attorney and filed a motion in that regard. Husband argues the issue was preserved in the district court for review in his first appeal because it was raised in his August 2, 2006, motion for rehearing. He argues that the fact the motion was denied by operation of law thirty days after being filed does not affect preservation, citing *Montgomery Ward v. Larragoite*, 81 N.M. 383, 467 P.2d 399 (1970), in which our Supreme Court reviewed a damages award that the appellant argued was excessive for the first time in a motion for a new trial that was automatically denied by operation of law thirty days after filing. *Id.* at 386, 467 P.2d at 402. While we do not agree that *Montgomery Ward* is applicable to the circumstances here, in that it was not presented with, nor did it decide the issue here, we agree with Husband that the issue was sufficiently preserved in the district court for review by this Court in Husband's first appeal. Husband's motion for rehearing and attempts to get it heard, and his docketing statement and memorandum in opposition filed in the calendaring process in the prior appeal, indicate that Husband sufficiently alerted the district court as well as this Court in the calendaring process to the point of error he was asserting in regard to the calculation of Wife's retirement benefits. We also agree with Husband that we should entertain the calculation issue in the present appeal.

{29}   The memorandum opinion of this Court on summary calendar in the prior appeal is not as clear on the calculation issue as it should have been. *See Scanlon v. Las Cruces Pub. Sch.*, 2007-NMCA-150, ¶ 7, 143 N.M. 48, 172 P.3d 185 (holding the law-of-the-case doctrine would not be applied where this Court's calendar notice was ambiguous). This Court stated in the memorandum opinion that it declined to consider Husband's calculation arguments because they were not raised in the district court. However, we acknowledged that it appeared "that Husband did raise [the] issue in his motion for rehearing," we noted that the motion was denied by operation of law, and we expressed concern that the district court never considered the issue raised in the motion for hearing. We did not expressly affirm the calculation in the district court's minute order, nor did we expressly reverse that calculation or remand that issue. We held that Husband's arguments were "not properly before us on appeal." Yet, without explaining the purpose for the statement, we stated that we expressed no comment as to what amount of benefits Wife should receive if the district court determined that she was entitled to benefits before Husband retired, a statement Husband construes to apply to the calculation issue. Husband essentially argues that we reversed the entire minute order, meaning the reversal included not only the issue as to when Wife was to begin receiving her benefits, but also the amount she was to receive.

{30}   On remand, the district court's position on whether the calculation issue was properly before the court was also unclear. The district court stated on more than one occasion its view that the calculation issue was not before the court on remand. However, at Husband's request, the court permitted Husband to "make a record" on the issue. Then, after further argument and Husband's counsel's statement that he was "prepared to go forward with evidence as to the appropriate amount

11

of the calculation," the court stated, "OK, we'll do that . . . . That's fine" and further stated, "That might be just . . . fine, so we can make a good record, and now . . . what I'll do is listen to it." Husband proceeded to testify, and the court admitted in evidence a document that showed Husband's version of the appropriate calculation.

{31} Following the hearing, both Husband and Wife submitted requested findings of fact and conclusions of law relating to the appropriate calculation. One of Husband's requested findings of fact stated that the proper calculation of the community interest was that contained in his admitted exhibit. The exhibit was based on an average salary during the three years ending August 31, 1994, on days of service during the marriage of 5866 (or 192 months), and on days of service at the time of valuation at divorce of 8404 (or 276 months), resulting in a community percentage of 69.8% and an accrued community benefit of $749.07 with Wife's one-half interest at $374.53. In her requested findings of fact, Wife stated that the court had improperly allowed Husband's evidence on the calculation issue and that she submitted her findings without waiving her trial objection in that regard. Wife pointed out in her requested findings how, in her view, Husband had "misconstrued and misapplied the formula."

{32} The court entered findings of fact and conclusions of law on the issue repeating verbatim or almost verbatim the following two findings of fact and one conclusion of law requested by Wife.

> Husband's interpretation of limiting . . . [W]ife's calculation of retirement [benefits] at the time of the divorce would deprive [W]ife of the natural and expected increase in the value of the pension over the years following the divorce.
>
> [] The "time rule" theory of division of retirement is applicable and equitable here, and was intended by the parties as reflected by the entire formula for division of the postal service retirement. *See In re Marriage of Lehman*, 18 Cal[.] 4[th] 169, 955 P.2d 451 (1998), and *In re Marriage of Judd*, 68 Cal. App[.] 3d 515, 137 Cal[.] Rptr[.] [318] (1977). Under the time rule[,] the community is allocated a fraction of the benefits, the numerator representing length of service during marriage but before separation and the denominator representing the total length of service by the employee spouse. The ratio is then applied to the *final* plan benefit. See *In Re Marriage of Gowan*, 54 Cal[.] App[.] 4[th] 80, 62 Cal. Rptr[.] 2d 453 (1997).
>
> . . . .
>
> The [c]ourt finds that there is sufficient information/evidence to determine that the benefit due and owing to [W]ife from [H]usband is $590[] per month commencing from December[] 2005. Based on the monthly amount of $590[], [H]usband owes [W]ife $12,390 from December 2005 through August[] 2007 (21 months) less any amounts previously paid by [H]usband to [W]ife.

We conclude that the district court on remand reconsidered the question of which formula and calculations should prevail and determined that the MSA and domestic relations order supported Wife's calculation.

**{33}** Husband nevertheless asserts that the court did not have evidence before it on which it could make such a determination because Wife's counsel's statements at the July 19, 2006, hearing, did not constitute evidence. Thus, Husband argues, Wife failed to present any evidence at the July 25, 2007, hearing to prove what particular calculation should prevail. It is reasonable to conclude that at the July 25, 2007, hearing, in considering what formula and calculation to adopt, the court chose that presented by Wife, through her counsel, at the July 19, 2006, hearing rather than the formula and calculation presented by Husband at the July 25, 2007, hearing. Except perhaps to determine salaries on a particular date for valuation purposes, there was no evidence required—only proposed formulas with calculations that flowed from those formulas. Wife's counsel's discussion was unchallenged. While the unchallenged explanation at the July 19, 2006, hearing was not taken under oath as testimony, we see no reasonable basis on which to deny the district court the discretion to consider it at the July 25, 2007, hearing. Husband did not contest the formula or calculation or the manner in which it was presented at the July 19, 2006, hearing. Nor did he raise in his motion for rehearing the particular issue of the manner in which it was presented. Not until the July 25, 2007, hearing did Husband argue that the court should not consider the formula it had earlier adopted because Wife's counsel's statements did not constitute competent evidence.

**{34}** The district court's findings and conclusions reflect that at the time of the July 25, 2007, hearing, the court viewed the formula in the MSA and the domestic relations order and Wife's calculation as consistent with application of the time-rule method of determining the community interest as it was developed in the California cases the court cited in its findings. *See Lehman*, 955 P.2d 451; *Gowan*, 62 Cal. Rptr. 2d 453; *In re Marriage of Judd*, 137 Cal. Rptr. 318. The court's stated view was that Wife was entitled to the natural and expected increase in value of the pension. While Wife did not present evidence other than the formula in the MSA and calculations based on the formula to show specific community effort that entitled her to base benefits on average salaries at the time of retirement eligibility, Husband did not present any evidence showing his own specific separate and singular effort that entitled him to base benefits on average salaries at the time of divorce. The court rejected Husband's offered calculation that was based solely on Husband's contrary view of the MSA and domestic relations order in determining the community interest.

**{35}** The court applied a method that can be applied in New Mexico when the parties agree to use it. *See Ruggles*, 116 N.M. at 66, 860 P.2d at 196 (stating that "the rule for distribution of a non[-]employee[-]spouse's interest in a retirement plan, whatever the rule is, should be applied only in the absence of an agreement between the spouses on the subject"). The time rule is a known formula and has been applied in one form or another in other jurisdictions. *See, e.g.*, *Lehman*, 955 P.2d at 461 (holding that the superior court did not err in apportioning retirement benefits "as enhanced between community and separate property interests through its application of the time rule"); *Gowan*, 62 Cal. Rptr. 2d at 457 (determining that the district court did not abuse its discretion in applying the time rule and setting out that the ratio derived from the fraction in the rule is "multiplied by the final plan benefit to determine the community interest"); *Fondi v. Fondi*, 802 P.2d 1264, 1266, 1267 (Nev. 1990) (recognizing that the initial calculation must always comply with the time-rule concept and with the concept called the "wait and see" approach that "the community gains an interest in the pension *ultimately received by the employee spouse*, not simply the pension that would be recovered were the spouse to retire at the time of divorce," but acknowledging that "because occasionally this determination would be unfair," the employee spouse should be allowed to show that a pension increase was due to extraordinary post-divorce effort); *Gemma v. Gemma*,

778 P.2d 429, 431 (Nev. 1989) (stating that the time rule is one of two approaches used by courts in dividing retirement benefits and that the advantages of the rule "clearly outweigh any other method of pension division").

{36}    It seems indisputable from the proceedings that occurred before the present appeal, despite the evident and unfortunate ambiguity and lack of clarity throughout the proceedings, that the district court determined on remand what it considered was the appropriate calculation of Wife's share of Husband's retirement benefits based on the MSA. We will therefore address the calculation issue in this appeal.

{37}    Before doing so, however, we note the concern expressed in the dissent in this case about a determination pitting Wife's counsel's statements of the formula, with numbers and math, to use in arriving at the gross monthly benefits, against Husband's exhibit showing how he arrived at the gross monthly benefits using numbers and math. We remain unconcerned. The only conceivable fact before the court that might be considered "evidence" which would be needed to complete the calculation of gross monthly benefits based on the different formula denominators would be Husband's salary information at divorce and his salary information at retirement eligibility. All else was solely formulaic, Wife choosing the time-rule formula with the figures that necessarily flowed from the nature of the formula, particularly including a denominator in the fraction favoring valuation of the gross monthly benefits at the time of retirement eligibility; and Husband choosing the same formula but changing the denominator of the fraction so that the formula favored valuation of the gross monthly benefits at the time of divorce.

{38}    Further, Husband expressly agreed at the July 19, 2006, hearing to the formula presented by Wife's counsel and did not disagree with the calculation of gross monthly benefits using the denominator that flowed from the time-rule formula. The calculation represented a benefits valuation at the time of retirement eligibility and that valuation in turn was or would necessarily be derived based on Husband's salaries then, salaries of which Husband was presumably aware. Husband did not present any evidence at the hearing. The most that might be thought, and it would be surmise, is that at the hearing Husband thought that the formula should be different. But the conflict, were it to have existed, would have been in the formula to be used, not in conflicting evidence. Once the formula issue was or would be decided, determining which salaries to use would flow from the formula. Determination of salaries at this time on remand will not be required or needed or serve a useful purpose.

{39}    Last, we see no inconsistency in determining that Husband preserved the right to challenge the district court's ultimate choice of Wife's proposed formula, on the one hand, and also in determining that once the issue of which formula and calculation to use was before the court, the court could choose Wife's version and not the version presented by Husband.

B.    The Calculation Issue Before Us on Appeal

1.    The Ambiguity

{40}    The formula in the MSA implements a pay-as-it-comes-in or reserved-jurisdiction approach to distribution. *See Ruggles*, 116 N.M. at 54-55, 58, 60, 860 P.2d at 184-85, 188, 190 (discussing

the lump-sum and pay-as-it-comes-in or reserved-jurisdiction methods of dividing vested, but unmatured, benefits and explaining that under the reserved-jurisdiction method, the non-employee spouse receives his or her portion of the benefits when the benefits are paid). But the MSA contains mixed signals as to the point in time that the benefits were to be valued for the purpose of arriving at Wife's community share.

{41}    The formula in Section II(A)(5) of the MSA and in the domestic relations order can support Wife's and the district court's views of the gross monthly benefits since the fraction's denominator is to be the total number of months of credited service at Husband's retirement, instead of the total number of months of credited service as of the date of divorce. That formula is consistent with the time rule as it is customarily applied for distribution of benefits in a manner that calls for benefits valuation at the time of retirement or at first retirement eligibility. In the present case, this would translate into use of Husband's salaries at the time of retirement eligibility in determining the gross monthly retirement benefits in the formula.

{42}    However, in the same Section II(A)(5), before setting out the formula, the MSA states that Wife will receive "[o]ne-half of the community interest in Husband's retirement plan with [the] United States Postal Service through the date of August 31, 1994." Also, Section II(B)(4) states that Husband will receive "[o]ne-half of the community interest in his retirement plan . . . and all of the interest he accrued in his retirement plan prior to the marriage and subsequent to August 31, 1994." These provisions, by specifying the date of August 31, 1994, provide support for Husband's view that under the MSA the benefits were to be valued at the time of divorce even though the distribution was to be made at first retirement eligibility or at retirement. Also supportive is the statement in the domestic relations order that the retirement benefits that accrued to Husband during the marriage up to the date of the divorce were community property.

{43}    Dividing the benefits under different interpretations leads to significant valuation differences in this case. Under Wife's approach, her monthly benefits would be $590, calculated as follows: $2,533 X (192/412) X (1/2) = $590, where (1) $2,533 is Husband's gross monthly annuity calculated using his average three-year-high salary as of first retirement eligibility in December 2005, (2) 192 is the number of months of marriage and participating in the plan, (3) 412 is the total number of months Husband participated in the plan up to first retirement eligibility, and (4) one-half is Wife's share of the community retirement benefits, which would be $590. In addition to her arguments relating to the documents, Wife argues that because she was not "cashed out" of the plan with a lump sum at the time of the divorce, and she therefore lacked the ability to control and invest her funds over the years, this Court should hold that the time rule was properly applied. She asserts that the time-rule calculation of benefits, which determines her share of benefits based on the gross amount of Husband's monthly annuity at first retirement eligibility, would compensate her for the time-accrued value of her share. To do otherwise, Wife argues, is inequitable, and neither the MSA nor any other evidence indicates that Wife intended the inequity that would result from Husband's calculation and position.

{44}    Under Husband's approach, Wife's monthly share would be approximately $373, calculated as follows: $1,073 X (192/276) X (1/2) = $373, where (1) $1,073 is Husband's gross monthly annuity calculated using his average three-year-high salary as of September 1994, which was the approximate time of divorce, (2) 192 is the number of months of marriage and participating in the

15

plan, (3) 276 is the total number of months Husband had participated in the plan up to the date of divorce, and (4) one-half is Wife's share of the community retirement benefits, which would be $373. In oral argument, Husband contended that a smaller denominator figure, i.e., the total number of months Husband had participated in the plan up to the date of divorce, should be used because its use was more fair to Wife when the gross monthly annuity was based on Husband's three-year-high salary at the time of divorce. Husband claims that the district court erred in utilizing "a 'high 3' salary factor, using [Husband's] post[-]divorce earnings as of December 11, 2005, rather than the 'high 3' factor as of the August 31, 1994[,] determination date." Pointing to MSA Sections II(A)(5) and II(B)(4) and the domestic relations order, Husband contends that the MSA is clear on the issue, in that it expressly limits Wife's entitlement to the date of August 31, 1994, or the date of divorce and expressly entitles Husband to the benefits after that date as his separate property.

## 2.        Husband's Reliance on *Franklin*

{45}     In an apparent attempt to show that his view of how the MSA reads should prevail, Husband argues that in *Franklin v. Franklin*, 116 N.M. 11, 859 P.2d 479 (Ct. App. 1993), this Court definitively "rejected [the w]ife's argument that the average salary figures to be utilized are those at the time of retirement, rather than [at] the time of divorce." *Franklin* does not assist Husband. It is not clear whether the formula in *Franklin* sets out the fraction that appears in the formula in the present case. The divorce decree did not specify a formula to be used in calculating the value and did not set a value on the benefits. *Id.* at 16, 859 P.2d at 484. This Court specifically wanted it known that the parties' arguments regarding the formulas and the wife's argument regarding the court's use of salary at the time of divorce were unclear. *Id.* at 15, 16, 859 P.2d at 483, 484. The parties argued for different formulas and calculations to determine the wife's share of the husband's benefits, with the husband's formula explained by his expert witness. *Id.* at 13-14, 859 P.2d at 481-82. The district court adopted the formula and calculation of the expert witness that were based, among other income adjustments, on the husband's average monthly compensation at the time of divorce. *Id.* at 14-15, 859 P.2d at 482-83.

{46}     On appeal in *Franklin*, the wife argued that the district court should have applied the husband's final average monthly salary at the time of actual retirement; the husband argued that the district court correctly applied the salary figure as of the time of divorce. *Id.* at 15, 859 P.2d at 483. The wife's argument was based on the time-rule cases of *Fondi*, 802 P.2d at 1266, and *In re Marriage of Bulicek*, 800 P.2d 394, 399 (Wash. Ct. App. 1990), for the view that the benefits payable at retirement are based on a presumed foundation of community effort and the employee spouse had the burden to show otherwise. *Franklin*, 116 N.M. at 16-17, 859 P.2d at 484-85. The husband's argument was that his post-divorce higher salaries and bonuses were his separate property and that the court's income adjustments were necessary to safeguard his interests and to prevent an invasion of his separate property. *Id.* at 17, 859 P.2d at 485.

{47}     As we discussed earlier in this opinion, this Court in *Franklin* did not address the question of first impression of what portion of the benefit was due to community effort and what portion was attributable to the husband as his sole and separate property. *Id.* We now clarify that decision to mean that we were not adopting any hard-fast rule as to demarcation of entitlement or as to what salaries to use in valuing the wife's community interest in the husband's retirement account. Nor in *Franklin* did we adopt the wife's view of the law based on *Fondi* and *Bulicek*. *Franklin*, 116

16

N.M. at 17-18, 859 P.2d at 485-86. We stated that even were we to do so, the wife would lose on the question of which salary figures to use as part of the formula. *Id.* We concluded this because the wife did not present any evidence to support her contention that the salaries and bonuses were due to community effort and not separate effort, and because the husband presented the only evidence on the issue and that evidence showed that his post-divorce salary increases were due to his separate efforts. *Id.* It was on the particular circumstances of the case that we could not "say that the trial court erred in using the amount of [the h]usband's average compensation as of the date of divorce in calculating [the w]ife's share of the pension." *Id.* at 19, 859 P.2d at 487.

{48}    *Franklin* is limited to its particular circumstances. It does not support Husband's position in this appeal. That in *Franklin* we expressly did not adopt and apply the wife's view of the law and thereby reject the district court's method of calculation does not require the conclusion that, under circumstances in the present case where the parties' MSA sets out a formula customarily found in time-rule application, the district court was precluded from interpreting the MSA as calling for a calculation consistent with the time rule.

### 3.    Husband's Reliance on *Ruggles*

{49}    Husband also attempts to support his position by relying on a footnote in *Ruggles* that refers to *Madrid*, 101 N.M. 504, 684 P.2d 1169, and *Mattox v. Mattox*, 105 N.M. 479, 734 P.2d 259 (Ct. App. 1987). *See Ruggles*, 116 N.M. at 59 n.7, 860 P.2d at 189 n.7. Husband does not develop an argument as to how the footnote or either *Madrid* or *Mattox* applies here to support his position. Husband simply declares that *Ruggles* "[made] it clear that the community retirement benefits *must be valued as of the date of divorce*," that the increases in his retirement benefits after divorce were his separate property, and that therefore the district court's calculation was erroneous as a matter of law. Husband does not discuss the facts in *Madrid* or *Mattox*, does not discuss the manner in which this Court in *Franklin* dealt with *Madrid* and *Mattox*, does not discuss the context in which *Ruggles* footnoted *Madrid* and *Mattox*, and does not discuss *Ruggles*' reference to *Franklin* and acknowledgment of the difficulty in determining whether a non-employee spouse can share in the increase in value of an employee-spouse's benefits. We first set out important analytic aspects of those cases that Husband has omitted. We then discuss why we reject Husband's attempt to support his position with the *Ruggles* footnote.

{50}    In *Madrid*, the parties' thirty-year marriage was dissolved two years before the husband died. 101 N.M. at 505, 684 P.2d at 1170. At death, the husband had been receiving retirement benefits for eleven years. *Id.* On remand from a prior appeal, the district court determined the discounted present value of the husband's pension. *Id.* This Court followed our Supreme Court precedent that a pension is to be valued at the time of divorce. *Id.* We further stated that the increases after divorce were the husband's separate property. *Id.* at 506, 684 P.2d at 1171.

{51}    In *Mattox*, when the parties divorced after thirty-one years of marriage the husband's pension plan was vested but not matured. 105 N.M. at 480-81, 734 P.2d at 260-61. The district court ordered a lump-sum payment to the wife that was to be valued at the time of trial, discounted to present value. *Id.* at 481-82, 734 P.2d at 261-62. In dicta, citing *Madrid*, we indicated that if the district court had divided the benefits on a pay-as-it-comes-in basis, the additional value from divorce to maturity date would be the husband's separate property. *Id.* at 483, 734 P.2d at 263.

17

**{52}** *Franklin* involved a formula for dividing periodic benefits payments that were distributed on a pay-as-it-comes-in basis. 116 N.M. at 12, 859 P.2d at 480. The parties were divorced after thirty-three years of marriage, and the husband retired five years after the divorce. *Id.* This Court stated that the issue of "which part of the [p]lan is due to community effort and which part of the [p]lan is attributable to [the employee spouse] as his sole and separate property" was a matter of first impression in New Mexico, and although it was determined that we did not need to decide the issue, at the same time, we determined that the issue "was not directly raised in either *Mattox* or *Madrid*." *Franklin*, 116 N.M. at 17, 859 P.2d at 485 (citations omitted). We indicated in our parenthetical description of *Madrid* that *Madrid* determined that "when [a] pension is given a discounted value for the purpose of division, it should be calculated as of the time of divorce." *Franklin*, 116 N.M. at 17, 859 P.2d at 485. We indicated in our parenthetical description of Mattox that the "substantial evidence requirement was met when the trial court's valuation of the pension fell within the range of figures offered by the parties' experts and both experts testified that their calculations of the present value of the pension did not take into consideration [the] husband's earnings between the date of trial and date of maturity of the pension." *Id.* We read our decision in *Franklin* to say that neither *Madrid* nor *Mattox* dictates in cases with pay-as-it-comes-in retirement distribution orders that the non-employee spouse can have no community interest in the employee-spouse's post-divorce benefits increases because those increases are separate property. This view is supported in *Ruggles*.

**{53}** In *Ruggles*, in the context of discussion of its prior cases involving division of future retirement benefits at the time of divorce, and in the footnote upon which Husband in the instant case relies, our Supreme Court referred to *Madrid* and *Mattox* as "significant opinions concerning the division, distribution, and valuation of retirement benefits upon dissolution." *Ruggles*, 116 N.M. at 59 n.7, 860 P.2d at 189 n.7. Our Supreme Court indicated in the parenthetical to its *Madrid* citation that *Madrid* relied "on [two earlier Supreme Court cases] to hold that [the] retirement plan must be valued at [the] date of dissolution and conclud[ed] that increases in [the] plan's value occurring after dissolution are separate property of [the] employee spouse." *Ruggles*, 116 N.M. at 59 n.7, 860 P.2d at 189 n.7. The Court indicated in the parenthetical to its *Mattox* citation that *Mattox* relied on four earlier Supreme Court cases in addressing various issues of valuation of a vested, unmatured plan when the *Mattox* Court stated, "New Mexico cases state clearly that a spouse is entitled to a community share of the portion of retirement that is vested but unmatured at the date of divorce." *Ruggles*, 116 N.M. at 59 n.7, 860 P.2d at 189 n.7 (internal quotation marks and citation omitted).

**{54}** It is noteworthy that the Supreme Court denied certiorari in *Franklin* just four days before it issued its opinion in *Ruggles*. *See Franklin*, 116 N.M. 11, 859 P.2d 479; *Ruggles*, 116 N.M. 52, 860 P.2d 182. The Court in *Ruggles* stated that *Franklin* illustrated the difficulties that can arise in having to make determinations long after the date of divorce in pay-as-it-comes-in cases. *Ruggles*, 116 N.M. at 65 n.14, 860 P.2d at 195 n.14. Significantly, the Court stated that those difficulties included "determining whether the non[-]employee spouse may share in increases in the amount of the pension due to post[-]divorce increases in the employee[-]spouse's salary, resulting either from ordinary promotions and cost of living increases or from the employee's increased effort and achievement at work." *Id.* We read these comments in *Ruggles* as indicating, as we indicated in *Franklin*, that a non-employee spouse may have a right to share in increases in the value of the employee-spouse's retirement benefits.

18

**{55}** We cannot accept Husband's arguments based on *Ruggles* for several reasons. First, Husband shows his own lack of faith in his references by failing to adequately develop them through analysis and argument. Second, we are dealing in the present case with written, agreed on, albeit ambiguous, language, and we see no reasonable basis on which to scuttle the district court's interpretation of the language based on an argument that the *Ruggles* footnote somehow requires a contrary interpretation. Even were the footnote or *Madrid* or *Mattox* to state what Husband contends they stand for, these authorities would not supplant what the parties agreed upon as interpreted by the court. Third, the context to which the *Ruggles* footnote relates is sufficiently far afield from the context of calculation of benefits in a pay-as-it-comes-in circumstance as to give no support to Husband. Fourth, as we stated earlier in this opinion, we read *Franklin* and *Ruggles* to recognize that, absent an agreement covering division of benefits, a non-employee spouse may be allowed to share in the employee-spouse's increased retirement benefits value.

**{56}** Thus, based on the foregoing discussion of *Madrid* and *Mattox* and the references to them in *Franklin* and *Ruggles*, based on *Ruggles*' discussion relating to *Franklin*, and based on the foregoing reasons for rejecting Husband's attempt to inject the *Ruggles* footnote, *Madrid*, and *Mattox* into the mix, we determine that Husband can gain no support from *Franklin* and *Ruggles*.


## III.     The District Court Did Not Err

**{57}** In the case at hand, it is apparent that the parties and their counsel handled the divorce without first achieving a clear, written understanding or, it appears, even an oral understanding. Ambiguity resulted. This case is one in which the proceedings leading up to this appeal were not adequately handled by courts and the parties. Further, this case is one in which there exists no specific evidence from which community effort or Husband's singular, separate effort can be derived. The parties do not request that we consider whether such evidence is necessary or should be obtained on remand. We see little choice but to narrow the issue we review to the district court's resolution of ambiguity in the MSA and the domestic relations order.

**{58}** The district court resolved the ambiguity in Wife's favor after considering the language in the documents, the nature of the formula, and the parties' calculations. One aspect of the MSA that supports the court's resolution is that the formula itself has every indicia of being the time rule. The time rule contemplates payment of benefits based on the value of the benefits at the time of retirement eligibility.

**{59}** A compelling aspect of how to determine what figures to use in the formula is the notion that the larger the denominator in the fraction, the smaller Wife's community share will be. The formula in this case expressly calls for the largest denominator, total years of credited service. In fairness to the non-employee spouse, use of this larger number as the denominator under application of the time rule customarily calls for determination of gross monthly benefits to be calculated based on a valuation of the benefits at first retirement eligibility, instead of a valuation of benefits at the time of divorce. It is telling that Husband's proffered calculation purposefully employed a denominator reflecting total credited service only up to divorce, a significantly lower figure than that expressly called for in the formula. His apparent, if not obvious purpose in using the lower denominator figure was to be able to use a valuation of the benefits based on his average salaries at the time of divorce,

19

thereby matching a lower denominator to a lower valuation in fairness to Wife. To adopt Husband's way of calculating the monthly benefit would be to change the denominator specifically called for in the formula.

{60}    We determine that the circumstances considered by the district court permit an interpretation of the MSA and domestic relations order favorable to Wife's position. Thus, under the circumstances in this case, we cannot say that the court's determinations were unsupported by substantial evidence, that the court's interpretation of the documents and ultimate calculation ruling were erroneous, or that the court erred in its application of the law to the facts.

**CONCLUSION**

{61}    We affirm the district court's determination that Wife was entitled to begin receiving her share of Husband's retirement benefits when Husband first became eligible to retire. We also affirm the district court's calculation of Wife's share of retirement benefits.

{62}    **IT IS SO ORDERED.**


_____

**JONATHAN B. SUTIN, Judge**


**I CONCUR:**


_____

**JAMES J. WECHSLER, Judge**

**ROBERT E. ROBLES, Judge (concurring in part, dissenting in part).**

**ROBLES, Judge (concurring in part and dissenting in part).**

{63}    I concur with the majority's analysis on the issue of when Wife was entitled to receive benefits. While I generally agree with the majority's legal analysis regarding calculation of retirement benefits, there must be a different conclusion under the facts of this case. My focus is on procedure and evidence surrounding the calculation issue. Because evidence is lacking in this case and under our standard of review we are unable to affirm, I would remand this case for further proceedings. I therefore must respectfully dissent.

{64}    I agree with the majority that Husband preserved his argument concerning the formula to be used. However, this Court's lack of clarity on the first appeal led to the confusion surrounding the issue, and the conclusions regarding the calculation issue that this Court holds today are an adherence to the earlier, faulty process.

{65}    In addition to what the majority has already noted at the initial hearing in 2006 where Husband appeared pro se, the following interactions occurred:

COURT:          Okay. Alright. Well, [Husband], I mean, part of the representation is, and I know this is, you folks have been divorced for some long time, but you remember back in . . . actually, let me see if I can get a more specific date, back in 1994. Actually, September of 1994, that you signed a marital settlement agreement?

[HUSBAND]:      Yes . . . .

COURT:          Pursuant to your divorce, you remember that? Just listen to my question.

[HUSBAND]:      Yes, sir. I agreed with the formula they came up with.

{66}  Several minutes later, the court stated:

COURT:          So, so what we're going to do is, is set out . . . getting that done, now if you need to get legal counsel, and herein lies one of the problems, and I understand, I'm sympathetic to a degree, [Husband], that, that you don't have legal counsel representing you, Ms. Spieldman is legal counsel just representing [Wife], and so you don't have legal counsel representing you, you're not a lawyer. . . . *If you want to get legal counsel* and . . . run this information by your legal counsel if you can afford to do that, you're certainly welcome to do that and *I'll listen to any argument that they want to make*. (Emphasis added).

                . . . .

                You need to start that immediately and we'll find out, and I think probably August 15 would be a good target date for you to start looking at getting . . . that to be your first payment of $590 and it will be $590 from that point forward. Now if you get legal counsel and you're going to dispute that amount and those kinds of things, well you'll have to have your legal counsel file a motion in that regard but it sounds pretty reasonable to me . . . based upon the formula that you both have agreed to, which we're not going to go back and redo. The only thing I can think of that would, might make that a little bit different is . . . whether or not the figures that Ms. Speildman is going to receive from you with regard to your . . . salary and your employment . . . would change that number some degree . . . otherwise, I'm expecting that that's going to be the amount.

21

**{67}** As the majority notes, Husband did hire an attorney and file a motion for rehearing as the district court suggested he do. On the first appeal to this Court, we initially proposed to affirm the district court on the calculation issue. Husband filed a motion in opposition to summary affirmance on that point, and we retracted our initial proposed holding. In our memorandum opinion filed in February 2007, we implied that the issue was not preserved, and we remanded the case.

**{68}** This Court stated:

> We decline to address Husband's arguments as to benefit computation because they were not raised in the district court. *See Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987) ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court.").

**{69}** We then went on to note that:

> "[W]e have not been provided with a copy of the transcript from the hearing on Wife's motion . . . . The lack of analysis contained in the motion for rehearing and the failure of the district court to act upon the motion lead us to conclude that the district court never considered the arguments set forth in Husband's motion for reconsideration and clarified in his memorandum filed with this Court. As a result, Husband's arguments are not properly before us on appeal.
>
> . . . .
>
> We express no opinion as to the amount of benefits that would be due Wife if the district court should determine that Wife is entitled to begin receiving benefits before Husband retires.

**{70}** The lack of clarity from this Court on the first appeal was, in part, due to the fact that we provided a ruling on the formula issue without a copy of the transcript from the hearing. The confusion on remand was compounded by the less than clear memorandum opinion generated by this Court. At the hearing on remand, Husband testified and entered into evidence an exhibit with his income information, his formula, and his calculations. Wife objected to the district court addressing the formula issue, arguing that it was beyond the scope of the remand, and that law of the case prevented the district court, and now this Court, from reviewing the issue. The majority correctly notes that the law of the case does not prevent us from examining this issue. The law of the case doctrine is discretionary and flexible, not a doctrine of inflexible law. *State ex rel. King v. UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 21, 145 N.M. 769, 205 P.3d 816. When a former decision is erroneous and the opportunity remains for us to correct earlier mistakes, we should apply the law of the land as opposed to the law of the case. *Reese v. State*, 106 N.M. 505, 506, 745 P.2d 1153, 1154 (1987).

**{71}** After determining that the issue can be reached, the majority, ultimately, concludes "that the district court on remand reconsidered the question of which formula and calculations should prevail

and determined that the MSA and domestic relations order supported Wife's calculation." Majority Op. ¶ 32. On examination of the record, however, I reach a different conclusion.

**{72}** At the initial 2006 hearing, Wife's counsel asserted:

> [W]e wrote in, in the formula, that the marital months were 192, according to my math [Husband] spent a total of 824 months earning this retirement. . . . [S]o that with my math, came out to be 23.2 percent is [Wife's] share of the gross monthly annuity which would be $2533. That's what he would have started receiving December 11 of 2005. So, I calculated that [Husband] would be required to pay . . . [Wife] $590 per month. That's 23.2 times 2533, . . . he should have been paying it since December. [S]o he has accrued an arrearage of, for seven and a half months of retirement, . . . [Wife] should have received commencing December 11. [A]nd . . . seven and a half months times the $590 is $4425.

**{73}** This oral assertion of Wife's counsel in 2006 is the only source in the record before this Court of the numbers that are being affirmed. The majority holds that it is reasonable to conclude that the district court relied on Wife's counsel's arguments from 2006, rather than the calculation presented by Husband in 2007, and that "[e]xcept perhaps to determine salaries on a particular date for valuation purposes, there was no evidence required." Majority Op. ¶ 33. Further, the majority explains that "Husband did not contest the formula or calculation or the manner in which it was presented at the July 19, 2006, hearing," and that it was not until 2007 that Husband argued that Wife's formula had no support in evidence. *Id.* I must disagree with the majority.

**{74}** First, as the above excerpts of the transcript demonstrate, the court assured Husband that if he chose to revisit any issue, he could hire an attorney and be heard. The district court completely and fully adopted Wife's mere assertions in a minute order with the caveat that Husband could litigate those issues if he chose. However unorthodox and ill-advised the district court's actions may have been, the majority is correct that, in the immediate case, Husband's arguments were preserved. Majority Op. ¶ 28. However, it is inconsistent for this Court to hold that the issue was preserved by Husband when he hired an attorney and filed a motion for rehearing, which alerted the district court, as well as this Court, in the first appeal to his claim of error and, at the same time, state that Wife's counsel's explanation was unchallenged. Majority Op. ¶ 33. If we are to hold that the issue was and is preserved, and Husband wishes to litigate it, there is a challenge.

**{75}** Secondly, as this Court has consistently expressed, "[t]he mere assertions and arguments of counsel are not evidence." *Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104 (filed 2008); *see also Henning v. Rounds*, 2007-NMCA-139, ¶ 2, 142 N.M. 803, 171 P.3d 317 ("We observe, [h]owever, arguments of counsel are not evidence." (alteration in original) (internal quotation marks and citation omitted)); *G & G Servs., Inc. v. Agora Syndicate, Inc.*, 2000-NMCA-003, ¶ 51, 128 N.M. 434, 993 P.2d 751 (filed 1999) ("[A]rguments of counsel are not evidence."); *Fitzsimmons v. Fitzsimmons*, 104 N.M. 420, 427, 722 P.2d 671, 678 (Ct. App. 1986) ("[C]ounsel's beliefs and statements cannot be considered as evidence."). Wife's counsel was not under oath, she was not giving testimony subject to cross-examination, and no documents were admitted into evidence before the district court. Husband had no duty nor opportunity to object to Wife's counsel's assertions and arguments regarding the calculation. Every single number that this Court affirms today came from either assertions or argument, not evidence. While Husband stated

23

at the 2006 hearing that he agreed with the formula "that they came up with" in 1994, it does not follow that the numbers argued by Wife's counsel were the correct numbers to use. In the 2007 hearing on remand, Husband presented his income information, which was admitted into evidence, and which remains the only income evidence in the record. While the district court and the majority may disagree with Husband's numbers because they were based on income from the time of divorce instead of the time of eligibility, there is nothing in the record that would allow them to apply Wife's counsel's numbers from 2006, which were mere assertions of counsel when those assertions are competing with actual income information that has been admitted into evidence.

{76}    Finally, under our standard of review, we simply cannot uphold the district court's determination. The proper lens through which to view our standard of review should be for substantial evidence. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Concerned Residents of Santa Fe N., Inc. v. Santa Fe Estates, Inc.*, 2008-NMCA-042, ¶ 68, 143 N.M. 811, 182 P.3d 794 (internal quotation marks and citation omitted). Here, the evidence in the record simply does not support Wife's position. The district court's conclusion of law that "[t]he Court finds that there is sufficient information/evidence to determine that the benefit due and owing to [W]ife from [H]usband is $590[] per month" simply has no basis for support when the only numbers in evidence and in the record belong to Husband.

{77}    In writing today, I recognize the need for finality and the security that comes with it. I acknowledge that the parties have already expended considerable time, effort, and money in this matter and deserve a prompt and equitable outcome. However, failing to address procedural difficulties is not justice, it is not in the parties' interest, and it is not in the interest of this Court. Because of the confusion surrounding this case, Wife never submitted evidence. Were we to resolve this issue today, we would have to conclude that Husband is entitled to application of his numbers because they are the only ones in the record. This matter should be remanded for admission of evidence and a decision which is supported by more than mere assertions. Holding otherwise implies that one party or the other has not had their day in court. We should endeavor to resolve issues on their merits whenever possible. I therefore cannot agree with the majority on this particular issue, and I must dissent.

_____
**ROBERT E. ROBLES, Judge**

**Topic Index for *Garcia v. Garcia*, No. 28,106**

| **AE** | **APPEAL AND ERROR** |
| AE-AJ | Appellate Jurisdiction |
| AE-LC | Law of the Case |
| AE-RM | Remand |
| AE-SR | Standard of Review |
| | |
| **CN** | **CONTRACTS** |
| CN-AM | Ambiguous Contracts |
| CN-IN | Interpretation |

**DR** **DOMESTIC RELATIONS**
DR-MS Marital Settlement Agreement
DR-RB Retirement Benefits and Pensions